*In re* COURTRIGHT.

1. INFANTS—ADOPTION—GUARDIAN AND WARD—STATUTES—JURIS-
DICTION OF PROBATE COURT.

Under the provisions of 3 Comp.Laws, § 8777, adoption proceed-
ings in probate court were valid where a consent thereto
was signed by the principal officer of the House of Provi-
dence, an incorporated institution which had the care of, and
retained the right of control over, the child although the
institution had placed the child in petitioner's hands more
than four years previously, with the purpose of ultimate
adoption, retaining only the right to secure possession of the
infant at any time; since the custody of the child was tem-
porary and subordinate to the right of the institution, its
control would not in contemplation of law terminate until
the child was adopted.

2. SAME—EVIDENCE—SUITABILITY OF GUARDIAN.

In habeas corpus proceedings the suitability of the petitioner,
after the completion of proceedings for the adoption of the
child, was sufficiently established by a showing of his financial
responsibility, of affection between the child and the adopt-
ing parents and the good character and standing of peti-
tioner and by the good results of his previous care and train-
ing of the child.

Habeas corpus proceedings by Frank Courtright against
Euphemia S. Jewell to test the right to the care and cus-
tody of Margaret L. Courtright, an infant. Submitted
October 17, 1911. (Calendar No. 24,678.) Decided De-
cember 21, 1911.

*Chawke & Lee,* for petitioner.

*Ewing & Dalton,* for respondent.

PER CURIAM. In the year 1907 Margaret Fitzpatrick,
an infant about two years of age, was taken by her mother,
with the approval of her father, to and placed in the

House of Providence, an incorporated institution under the care and management of the Sisters of Charity of the Catholic Church in Detroit. Her father testified that it was the intention of himself and wife to abandon the child to the institution. In the month of January, 1909, the petitioner, Frank Courtright, and his wife, Laura Courtright, obtained the child from the House of Providence with the intention of adoption, but without any formal agreement with the institution. Petitioner claims that the institution declined to permanently surrender its rights to the custody and control of the child until satisfied that the parents would not wish to resume their parental rights. In March, 1911, Mrs. Courtright took the child to Grand Rapids, where her mother lived, and turned her over to Mrs. Euphemia S. Jewell to find a home for her, but on the same day changed her mind, and Mrs. Jewell returned the child. In May, 1911, the child, having gone with Mrs. Courtright's son, Harold, 14 years of age, to visit their grandmother, was by the grandmother again turned over to Mrs. Jewell, the chairman of the adoption committee of the D. A. Blodgett Home for Children; she telling Mrs. Jewell that she did so by direction of Mrs. Courtright. Some time about the 18th of May Mrs. Courtright again desired the return of the child, which Mrs. Jewell declined. Mrs. Jewell testified that in her talks with her Mrs. Courtright had repeatedly told her that she was of a very nervous temperament; that her son, Harold, was not her husband's child; that she was very jealous of her husband's love for Margaret; that, if Margaret were adopted, she would inherit in preference to her son, and that she could not stand it to have her in the house, but Mr. Courtright insisted on keeping her. The 3d or 4th of May Mr. Courtright had an interview with Mrs. Jewell at Grand Rapids. She testifies:

"He asked me if I would give her back to him. I said in my judgment their home was not suited to bring up the child, and that I would not give her up to him, unless I was convinced I was mistaken in my supposition."

Habeas corpus proceedings were thereupon instituted in the circuit court for Kent county, which were afterwards, on June 20, 1911, discontinued by stipulation, and on June 21st habeas corpus proceedings were instituted in this court. Return having been made to the writ by the respondent, Mrs. Jewell, issues of fact were settled and—

"Referred to the circuit court for the county of Wayne, with privilege of taking testimony in Grand Rapids by deposition. When finished, the testimony to be returned and reported to this court with the opinion of the circuit judge thereon. The issues referred to are as follows: *First.* Was the child legally adopted by Frank L. Courtright? *Second.* Are the foster parents proper persons to have the custody of the child? *Third.* What do the best interests of the child require?"

The opinion of the circuit judge, returned with the testimony, answers the first and second questions in the affirmative, and, as to the third question, finds that the best interests of the child will be subserved by her return to her foster parents.

The correctness of the answer to the first question depends upon the legality of proceedings in the probate court for Wayne county. The legality of the proceedings is assailed for the reasons that: (1) The House of Providence did not have a present care, custody, and control of said child so as to qualify its president and principal officer, Sister Laura, to give the consent required by 3 Comp. Laws, § 8777, subd. "d." (2) The probate court had no authority or power to cure this jurisdictional defect by its order of confirmation. (3) The Wayne probate court had no jurisdiction because of (*a*) adverse possession of said child in another jurisdiction; (*b*) prior relinquishment of possession of said child by Mrs. Courtright; (*c*) pendency in the Kent county probate court of a petition for guardianship of said child; (*d*) pendency of the habeas corpus proceedings in the Kent circuit court and the unrevoked order of the circuit judge remanding the child to the custody of respondent till the final order of the court; (*e*) failure to notify respondent of the probate proceedings for adoption.

The serious question presented is as to the legality of the consent of Sister Laura. Her consent as stated in the declaration which she executed on June 12, 1911, is as follows:

"I, Sister Laura, president and principal officer of the House of Providence of the city of Detroit, said institution having had the care, custody, and control and to which the above-named minor was abandoned, do hereby join in the execution of said instrument," etc.

The affidavit of Sister Laura filed in support of the proceedings made on June 12, 1911, contains the following:

"That said infant was abandoned and left at the said House of Providence, and its parents are unknown. Deponent further says that the said House of Providence has had the care and custody of said infant from date of abandonment until February, 1909, when said child was turned over to Mr. and Mrs. Frank Courtright, of the city of Detroit, county of Wayne, and State of Michigan, for the purpose of adoption by them."

The declaration was sufficient to confer jurisdiction, unless it was so qualified by the affidavit as to indicate that the House of Providence had absolutely abandoned all right to the care and custody of the child. The petitioner testified that the occasion of the delay in adopting the child was that the House of Providence was unwilling to execute the declaration of its consent until satisfied that the parents would not return and ask for the child, and that he recognized the right of the House of Providence to the custody of the child if desired, and that his custody was temporary and subject to the rights of the institution. Under such circumstances, the care of the House of Providence in legal contemplation would not terminate until the child was adopted under the mutual arrangement. We therefore concur in the opinion of the circuit judge as to this question.

The opinion of the circuit judge as to the second and third issues was as follows:

" (2) Are the foster parents proper persons to have the custody of the child ? A considerable amount of testi-

mony has been presented upon this point, especially in the testimony taken in Detroit. The witnesses presented by petitioner are of excellent standing and unite in their belief of the good character of the Courtrights in every respect, and the excellent atmosphere of the home and surroundings. The uncontradicted testimony shows the financial ability of the foster parents to rear the child properly, and I believe from the testimony and the appearance of the parties upon the stand that beyond question they are proper persons to have the custody of the child. The only question that has been raised in the case is as to the actions of Mrs. Courtright at the time the little girl was sent to the Blodgett Home at Grand Rapids. The testimony, however, shows to me that this act was more the act of the mother, Mrs. Watts, than that of Mrs. Courtright, and whatever was done by Mrs. Courtright at the time was caused by an attack of a nervous ailment, from which she had been suffering, but which, as testified by the doctor, is not of a permanent character.

" (3) What do the interests of the child require ? The testimony of the witnesses on this point show that a real affection has sprung up between the little girl and the foster parents, such an one as, in my judgment, it would be wrong to sever. The testimony concerning the present condition of the little girl, her deportment, and character, reflect credit upon the past two years of training she has had at the hands of the foster parents. The interests of the child in my judgment would not be best subserved by the breaking of these ties and the building up of new affections in changed surroundings."

While this opinion is not conclusive of the facts found, we do attach weight and importance to it because of the superior advantages possessed by the circuit judge in having the principal witnesses in the case before him and observing them and their manner of giving their testimony. But, independent of this, we are satisfied from our examination of the testimony that his findings of fact are fully sustained, and that the best interests of the child require that she be restored to her foster parents.

The respondent is ordered to restore the child to the petitioner, Frank Courtright.

BIRD, J., being ill, took no part in this decision.