FISHER v. GARDNIER.

1. WILLS—DESCENT—LIFE ESTATE.

Under a will bequeathing and devising an estate in trust for the son of the testatrix, during his life, and on his death to his children or issue of any deceased child, no title to real estate vested in an adopted daughter of the son, through the statute of descent, for the reason that the son did not die seised of the real property: his interest ceased at his death.

2. ADOPTION—WILLS—STATUTES—AFFIDAVITS—PRINCIPAL OFFICER.

By an equal division of the court it is *held*, that under 3 Comp. Laws, §§ 8776-8780 (4 How. Stat. [2d Ed.] §§ 11636 to 11640), complainant was duly adopted by decedent in proceedings before the probate court based upon an affidavit of the matron of the Mercy Hospital at Detroit, in which affiant states that she was the matron of such hos-

pital and was the only person having the custody and
control of the minor and lawfully entitled to give consent
to her adoption; the provision of statute, requiring the
consent of the principal officer of the institution in whose
charge the infant might be, was substantially complied
with, and the adoption valid. STONE, OSTRANDER, BIRD, and
STEERE, JJ., dissenting.

3. ADOPTION—ESTATES OF DECEDENTS.
    A child by adoption takes title under the statute as a lineal
    descendant, not by birth, but as a statutory lineal descend-
    ant.

Appeal from Oakland; Smith, J.   Submitted April
17, 1914.   (Docket No. 66.)   Decided January 4, 1915.
Rehearing denied April 28, 1915.

Bill by Gladys I. Fisher, by her next friend, against
Frank Gardnier and others for a decree quieting title
to certain real property.   From a decree for complain-
ant, defendants appeal.   Affirmed.

*Davis & Bromley,* for complainant.

*Patterson & Patterson* and *William S. Jenney,* for
defendants.

BROOKE, C. J.   The statute, 3 Compiled Laws,
§ 8780 (4 How. Stat. [2d Ed.] §§ 11636-11640), pro-
vides:

"Whereupon such child, * * * and the person
or persons so adopting such child, shall thereupon
stand in the place of a parent or parents to such child
in law, and be liable to all the duties and entitled to
all the rights of parents thereto, and such child shall
thereupon become and be an heir at law of such per-
son or persons, the same as if he or she were in fact
the child of such person or persons."

A child by adoption takes as a lineal descendant of
the legatee by force of the statute; not as a lineal de-
scendant by birth, but as a statutory lineal descend-

ant, and as lawfully in the line of descent as if he were placed there by birth. *Warren* v. *Prescott*, 84 Me. 483 (24 Atl. 948, 17 L. R. A. 435, 30 Am. St. Rep. 370) ; *Hartwell* v. *Tefft*, 19 R. I. 644 (35 Atl. 882, 34 L. R. A. 500) ; *Flannigan* v. *Howard*, 101 Ill. App. 616; *Id.*, 200 Ill. 396 (65 N. E. 782, 59 L. R. A. 664, 93 Am. St. Rep. 201) ; *Ultz* v. *Upham*, 177 Mich. 351 (143 N. W. 66).

As I understand the opinion of my Brother STONE, his holding upon this point is in consonance with the above. It is his opinion, however, that the proceedings for adoption were faulty and nugatory, for the reasons pointed out in his opinion. With this conclusion I find myself unable to agree.

The affidavit or consent of Jennie Sterling is in the following language:

"And Jennie Sterling, being the matron of Mercy Hospital, of Detroit, Mich., and being the only person having the custody and control of said minor and lawfully entitled to give consent thereto, so [do] execute this instrument for the purpose of giving consent in writing to the adoption and change of name of said child as aforesaid, and that said child may become the heir at law of said parties so adopting her, I, the said Jennie Sterling, do hereby certify that said minor has been abandoned by its parents and placed with me for the purpose of finding a suitable home for said minor."

The order of the judge of probate recites that the proceedings were taken in good faith, and that they were based upon the declaration of Ira W. Fisher, and his wife, Matilda, and the consent of Jennie Sterling, the matron of Mercy Hospital, Detroit.

The case of *In re Courtright*, 167 Mich. 689 (133 N. W. 820), is exactly like the present case, with the exception that the affidavit of Sister Laura recited the fact that she was president and principal officer of the House of Providence, of the city of Detroit.

I am of opinion that the averments contained in the

affidavit of Jennie Sterling are sufficient to constitute a substantial compliance with the essential requirements of the statute. It will be observed that she asserts not only that she is matron of Mercy Hospital, but that she has custody and control of said child, and is lawfully entitled to give consent to its adoption.

The probate court for Oakland county, having this evidence before it, made a judicial order based thereon. It is quite obvious that that court was satisfied that the description of the character of Jennie Sterling and the assertion by her that she was the person legally entitled to give consent, taken together, was a sufficient compliance with the statute which requires such consent to be given by "the principal officer of any institution, public or private, in this State or elsewhere." It is a matter of common knowledge of which we should take judicial notice that papers for use in the probate courts of the State are frequently prepared by those not particularly learned in the law and without that appreciation of legal niceties that characterizes the work of one so learned. A substantial compliance with the statutory requirements should be held sufficient. I am of opinion that the court was justified in the conclusion reached. An examination of the various meanings given to the word matron include the following:

"A head nurse in a hospital; the family head or superintendent of any institution." Century Dictionary and Encyclopedia, vol. 5.

We find therefore that among the accepted definitions of the term is "a head of any institution." The adoption proceedings were conducted in good faith and were legally sufficient.

The decree of the court below should be affirmed.

MCALVAY, KUHN, and MOORE, JJ., concurred with BROOKE, C. J.

STONE, J.    The bill of complaint in this cause was filed to quiet the title of complainant in an undivided two-thirds of the lands therein described, being 15.87 acres on section 23 in Avon township, county of Oakland.    The land in controversy was inherited from Hester Roberts in 1858 by her daughter Laura, who was twice married; first to a Mr. Fisher; and afterwards to a Mr. Mastin.    On June 15, 1897, Laura C. Fisher Mastin, being then the owner of the premises, duly made and published her last will and testament. After directing the payment of her just debts, funeral expenses, and the expense of settling her estate, and the placing of suitable markers at her grave, and that the date of her death should be placed upon the monument then on her lot in the Rochester cemetery, and after making certain bequests of personal property to certain persons, the will provided as follows:

"*Fifteenth.*    All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to Harvey Taylor, my executor and trustee hereinafter named, in trust, to be held and controlled by him for and during the life of my son, William Ira Fisher, and from the use and income thereof, I will and direct that my cemetery lot in the Rochester cemetery shall be kept in good order and repair, and that the buildings and fences on my real estate, from said income, shall be kept up, and the balance of said income, after the expenses of executing the trust, shall be paid to my son, William Ira Fisher, each year, for and during his life, and at his death the residue of my said estate then remaining, to go to his child or children, him surviving, to whom I give and bequeath and devise the same.    Provided, however, that in case my said son leave no child or children, or issue of any deceased child surviving at his death, then in that case, the residue of my estate remaining at the death of my said son shall go to my nearest kin living at the time of the death of my said son, to whom I do hereby give and bequeath and devise the same.

"*Sixteenth.*    In case it may be deemed necessary or

advisable by my said executor and trustee, I hereby will and direct that my real estate may be sold under the direction of the proper court, and the proceeds thereof invested by my said executor and trustee, to produce an income which shall be used in the manner above herein specified, and I further will and direct that in case of sickness of my said son, or other disability, by which he is unable to earn his living, then and in that case the proper court, upon the application of said executor and trustee, and after a proper hearing and investigation on said application, shall make an order to advance to my said son from time to time such sum or sums from the principal, as may be necessary and required for my said son's support and maintenance, but I expressly will and provide that my said son shall have no voice in the determination of that question, it being my intention by this provision of my will to save for my said son a home during his lifetime, and to keep him from want, and from being dependent upon others for his living, and this provision should not in any sense be taken as a measure of a want of affection which I have for my said son, but is made for the express purpose of protection for him, and in the manner that I consider will be for his best interest and for his own good, and I urge upon my executor and trustee, and his successor, if any, and upon the court, that this condition and object of my will shall be kept in view, and that this trust shall be strictly carried out.

"*Seventeenth.* And lastly, I hereby nominate and appoint Harvey J. Taylor, of Rochester, Michigan, to be the executor and trustee of this my last will and testament, hereby revoking any and all former wills by me made."

On February 26, 1904, Laura C. Fisher Mastin died, seised of said real estate, at the age of 82 years, leaving surviving her but one child, the son, William Ira Fisher, mentioned in her will. Her said will was duly admitted to probate, and her estate administered pursuant thereto by Harvey J. Taylor, the executor and trustee therein named, except as to the trust. On August 14, 1906, the probate court of Oakland county,

in the matter of her estate, duly made its final order of distribution therein, which order provided as follows:

"It is further ordered * * * that the real estate of which said deceased died seised be, and the same is hereby, assigned according to the terms of the will of said deceased, and further ordered, that said executor be, and he is hereby, discharged, except as to the trust under said will."

It was conceded at the hearing of the instant case that the son, William Ira, was a party to that proceeding, and was bound by it. The son, William Ira Fisher, died on May 9, 1910, leaving no child or children surviving, unless it shall appear that the complainant Gladys Irene Fisher was his child by adoption. On May 16, 1911, the complainant, a child of unknown parents, by her next friend, instituted this suit, asserting her adoption by William Ira Fisher and his wife on August 21, 1901, and claiming that as such adopted child she owned said land: *First*, by inheritance from said William Ira Fisher; and, *second*, by virtue of the will of his mother, above quoted. To this suit the "nearest kin" of Mrs. Mastin "living at the time of the death of" said William Ira Fisher were made defendants, that complainant's alleged title might be quieted as to them. These defendants, answering, denied all the material allegations of the complainant's bill, and asserted by way of cross-bill that they, as Laura C. Fisher Mastin's next of kin, were entitled to this land by virtue of her will, praying for appropriate relief, and bringing in by process issued on the cross-bill, as cross-bill defendants, Harvey J. Taylor, the trustee, Thomas W. Hacker and James G. Toles, his bondsmen, Matilda Fisher, wife of William Ira Fisher, deceased, and the Detroit United Railway Company, an alleged grantee of part of the premises. Personal service was had upon all of the

cross-bill defendants, and the default of all of them for want of plea, answer, or demurrer was duly entered, excepting the cross-bill defendant Matilda Fisher, who filed an answer thereto. The cross-bill of the principal defendants, Aurora Steevens, Emma Drehner, Glendora Drehner, and Merritt Nye, is taken as confessed by all of the cross-bill defendants, excepting Matilda Fisher. At the final hearing of the cause the complainant was granted a decree, and the defendants have appealed.

It is their claim that complainant is not entitled to the real estate in controversy on any theory:

*First.* That she could not inherit it from William Ira Fisher, as a child adopted by him, because he did not die seised of it.

*Second.* (*a*) That she could not take it under the will of Laura C. Fisher Mastin, above quoted, because a proper construction thereof excludes her, even if she was a child adopted by William Ira Fisher. (*b*) Because her attempted adoption proceedings were legally insufficient to create that relation.

A citation of authorities is not necessary to show that by this will William Ira Fisher obtained no title to this land. All the interest which he ever had therein ceased at his death, and the probate court had no power to assign to him any interest therein contrary to the terms of the will. Certain proceedings were taken in the probate court under section 9471, 3 Comp. Laws, to determine who were the legal heirs of William Ira Fisher. Of that statute this court, in *Lorimer* v. *Wayne Circuit Judge,* 116 Mich. 682, at page 683 (75 N. W. 133), said:

"The act under which the proceedings were instituted does not purport to make the proceedings of the probate court conclusive upon anybody. They are not binding even upon the relator. The petitoner, or other person interested, if not satisfied with the find-

ings, might, in any judicial proceeding, resort to original evidence, and wholly ignore the action of the probate court."

That complainant acquired no part of this land by inheritance from William Ira Fisher, because he did not die seised of it, is too plain for argument.

If complainant acquired any of the land in question, she did so by virtue of the will of Laura C. Fisher Mastin. This involves the validity of the alleged adoption proceedings. The claimed adoption order bears date August 21, 1901. The only adoption statute then in force was Act No. 77 of the Public Acts of 1891, as amended by Act No. 141 of 1897, being sections 8776 to 8780, 3 Comp. Laws. Complainant claims that she was adopted in conformity therewith. This is denied by defendants.

Section 8777 provides that such adoption shall be with the consent of the persons thereinafter described, viz.:

Subdivision (d): "In case such child is an orphan, or is abandoned by its parents or surviving parent, or by its mother, if it be illegitimate, then with the consent of the nearest of kin or guardian of such child, or of the principal officer of any incorporated asylum, hospital or home, of which such child may be an inmate, or of two superintendents of the poor of the county, or the director of the poor of any city or township of which such child is a resident, or of the principal officer of any institution, public or private, in this State or elsewhere, in whose care such orphan or abandoned child may be."

It is the claim of appellants that there was no attempt to comply with this statute and that the forms used were not adapted to the statute. The pertinent question is whether there was a substantial compliance with the essential requirements of the statute. The application for adoption was as follows:

"Know all men by these presents that we, William I. Fisher and Matilda Fisher, his wife,. of Rochester, Oakland county, Mich., do hereby declare that Gladys Irene Fisher, a minor child, whose parents are unknown, and an orphan of the age of three years on the 20th day of November, 1901, is. adopted by us, and each of us, as our child, and that we intend to make such child so adopted our heir, and the heir of each of us, and desire that such child shall hereafter bear our family name, to wit, the name of Gladys Irene Fisher. And we, the said William I. Fisher and Matilda, his wife, do each of us declare that this instrument is executed in good faith, and we do hereby request the judge of probate for the county of Oakland and State of Michigan to make and enter in the journal of said court an order that said William I. Fisher and Matilda Fisher, his wife, do stand in the place of parents to said child, and that said child be their heir at law, and that the name of such child be changed as aforesaid in accordance with the provisions. of the statute in such case made and provided.

"And Jennie Sterling, being the matron of Mercy Hospital of Detroit, Mich., and being the only person having the custody and control of said minor and lawfully entitled to give consent thereto, so execute this instrument for the purpose of giving consent in writing to the adoption and change of name of said child as aforesaid, and that said child may become the heir at law of said parties so adopting her, I, the said Jennie Sterling, do hereby certify that said minor has been abandoned by its parents and placed with me for the purpose of finding a suitable home for said minor.

"In testimony whereof, we have hereunto set our hands and seals this 8th day of August, 1901.

[Signed]     "IRA W. FISHER.          [L. S.]
             "MRS. MATILDA FISHER.     [L. S.]
             "JENNIE STERLING.         [L. S.]

"STATE OF MICHIGAN,
   "COUNTY OF WAYNE—*ss.*:

"On this 17th day of August, A. D. 1901, before me, a notary public in and for said county, personally came the above-named Jennie Sterling known to me to be the person who executed the foregoing instrument, and acknowledged the same to be her free act

and deed for the uses and purposes therein mentioned.
[Signed]    "George F. Standley,
"Notary Public, Wayne Co., Mich."

The execution of said instrument was acknowledged by the said William I. Fisher and Matilda Fisher, in the same form, on August 8, 1901, before a notary public of Oakland county.

The order of the probate court bears date August 21, 1901, and after its caption was as follows:

"In the Matter of the Adoption and Change of Name of Gladys Irene Fisher, a Minor.

"On reading and filing the declaration duly acknowledged of Ira W. Fisher and Matilda Fisher, his wife, declaring that said Gladys Irene Fisher is adopted by them as their child, and that they intend to make such child their heir, and desire that such child shall hereafter bear the name of Gladys Irene Fisher, and be their heir at law, and on reading and filing also the consent in writing of Jennie Sterling, the matron of Mercy Hospital, of Detroit, Mich., the parents of such child being unknown, she being a foundling, to the adoption and change of name of said child as aforesaid, and it appearing satisfactorily to the court that such proceedings have been taken in good faith, and that said Ira W. Fisher and Matilda Fisher are suitable persons to have the charge of said child.

"It is therefore ordered, adjudged, and decreed that said Ira W. Fisher and Matilda Fisher do stand in the place of parents of said Gladys Irene Fisher, and that said Gladys Irene Fisher be and become the heir at law of said Ira W. Fisher and Matilda Fisher, with all the rights, privileges and duties appertaining thereto as provided by law.

"Joseph S. Stockwell, Judge of Probate."

Upon the trial of the instant case, Mrs. Matilda Fisher testified that she and her husband took the child when it was about five months old, and adopted it when it was about two years old; that she did not know who the mother of the child was, and she testified further as follows:

"I know how long I had her before I adopted her, and when I did adopt her the matron of Mercy Hospital, where she had been, went before a notary public and made an affidavit; she didn't go before the probate court.

"Q. During the time you had the child was the fact as to whether it was a suitable place for the child to be placed looked after by Mrs. Sterling?

"A. They always looked after them; that was their laws."

It is the contention of counsel for appellants that the probate court was without jurisdiction to make an order of adoption for many reasons, two of which are that it did not appear that the consent to the adoption was given by the principal officer of any institution in whose care such orphan or abandoned child was; that it cannot be presumed that the matron was the principal officer of Mercy Hospital; that, in the absence of evidence, the court can indulge in no presumptions on that subject; and that it does not appear that Jennie Sterling was the "principal officer of any institution," because "matron," as applied to a hospital, means a nurse, which is not a "principal officer." Further, that the act of 1897 nowhere authorizes adoption on the consent of an *individual* with whom a child has been placed for the purpose of finding a suitable home, or to whom it has been abandoned by its parents; that Jennie Sterling had no authority to consent to this adoption, and that, if "said minor has been abandoned by its parents and placed with me for the purpose of finding a suitable home for said minor," as stated, then, in the words of the statute, the consent of "two superintendents of the poor of the county, or the director of the poor of any city or township of which said child is a resident" was necessary. This is a statutory proceeding, and the rule seems to be well established that there must be a compliance with all of the essential requirements of the

statute, but the statute should not be construed so narrowly as to defeat the manifest legislative intent. 1 Cyc. p. 919. See note to *Chehak* v. *Battles* (Iowa), 12 Am. & Eng. Ann. Cas. 144.

In *Morrison* v. *Sessions' Estate,* 70 Mich. 297 (38 N. W. 249, 14 Am. St. Rep. 500), it was said:

"A proceeding which so materially affects the succession of property and the rights of natural heirs is a very important one."

And attention is called to the fact that it is a proceeding not recognized by the common law of England, and exists in this country only by special statute. This proceeding is far-reaching in its effect upon rights of inheritance of property, and a strict compliance with the provisions of the statute is essential to its validity. The failure of the court to obtain jurisdiction renders the decree void. Volume 1, Ruling Case Law, title "Adoption of Children," § 41; *Shearer* v. *Weaver,* 56 Iowa, 578 (9 N. W. 907); *In re McCormick's Estate,* 108 Wis. 234 (84 N. W. 148, 81 Am. St. Rep. 890).

We had a similar question before us in *Re Courtright,* 167 Mich. 689 (133 N. W. 820). There the consent of the principal officer was as follows:

"I, Sister Laura, president and principal officer of the House of Providence, of the city of Detroit, said institution having had the care, custody, and control and to which the above-named minor was abandoned, do hereby join in the execution of said instrument," etc.

In that case the affidavit of Sister Laura, filed in support of the proceedings had on June 12, 1911, contained the following:

"That said infant was abandoned and left at the said House of Providence, and its parents are unknown. Deponent further says that the said House of Providence has had the care and custody of said

infant from date of abandonment until February, 1909, when said child was turned over to Mr. and Mrs. Frank Courtright," for the purpose of adoption by them.

We held the proceedings valid, and the reason therefor is fully stated. The cases are readily distinguished. We are constrained to hold in the instant case that there was not a compliance with the provisions of the statute in the particulars named, and that the probate court had no jurisdiction to make the order of adoption, and that such order was void. It will be observed that the probate court did not, by its order, find that consent was given by the "principal officer" of any institution in whose care such child was.

The complainant, therefore, is entitled to no relief in the case and her bill of complaint should be dismissed, and the defendants given relief under their cross-bill as prayed for therein.

The decree of the court below should be reversed, complainant's bill dismissed, and a decree entered here in accordance with this opinion, with costs to defendants.

OSTRANDER, BIRD, and STEERE, JJ., concurred with STONE, J.