## *In re* BROWN.

1. PARENT AND CHILD—CUSTODY OF CHILDREN.
    The best interests and happiness of the child must always control a court to whom is presented the question of determining the custody of a child, where the right of a parent is not clear and imperative.

2. SAME—CUSTODY OF CHILD—EVIDENCE—BEST INTERESTS OF CHILD.
    Custody of 6-year-old boy is not awarded to father upon his

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 17 Am Jur, Divorce and Separation § 683.

petition for habeas corpus, where he had placed the child in custody of defendant sister and her husband when he was less than 2 weeks old, shortly before death of the boy's mother, and they had treated him as their own son in the interim while his 3 older brothers were cared for by the father's mother, the father had not contributed toward the son's support and has now remarried and expects to take up residence in Oregon, the evidence clearly supporting trial court's finding that best interests of boy would be served by leaving him where he is.

Appeal from Wayne; Murphy (George B.), J. Submitted June 8, 1955. (Docket No. 15, Calendar No. 46,231.) Decided October 3, 1955. Rehearing denied December 28, 1955.

Petition by Ernest E. Brown against Gertrude V. Cook and Harold C. Cook for writ of habeas corpus to test right of custody to his son, Roland Brown. Writ denied. Plaintiff appeals. Affirmed.

*Bernard L. Walsh* (*Wurzer, Higgins & Starrs,* of counsel), for plaintiff.

*Leo S. Schrot,* for defendants.

REID, J. Plaintiff, Ernest E. Brown, filed his petition for a writ of habeas corpus alleging that Roland Brown, the son of the plaintiff, is being restrained and detained illegally by Gertrude V. Cook and Harold C. Cook. Plaintiff claims that he is lawfully entitled to full and complete custody of his said son. From an order denying his petition, plaintiff applied for leave to take an appeal in the nature of certiorari. The application for leave to appeal was granted, the cause to be heard in this Court as a motion.

Roland Brown was born October 8, 1947. He was born prematurely and weighed only 4 pounds, 12 ounces at the time of his birth. Plaintiff, Ernest E. Brown, and his wife, Beatrice Brown, the parents

of the said Roland Brown, were married November 23, 1935, and had 3 older sons before the birth of Roland. At the time Roland was born, Beatrice Brown was in poor health, and soon after was found to be suffering from cancer. She seemed to know that she would never get well and about 2-1/2 months after the birth of Roland, she died.

Gertrude V. Cook is an older sister of Ernest E. Brown. Before Beatrice Brown died, she told Gertrude V. Cook and her husband, Harold C. Cook, to take Roland and keep him always and to look after and care for him as though he were their own child.

Plaintiff, Ernest E. Brown, says that upon the request of his mother, he arranged with the Cooks to take Roland and Ernest E. Brown further testified that at the time of Beatrice Brown's death he was not physically so situated that he could care for Roland. His mother was elderly, had her hands full with taking care of the 3 older brothers of Roland, and she did not want the care of Roland. In any event, it is clear that the ill mother, Beatrice, and plaintiff, Ernest E. Brown, the parents of Roland both consented and arranged that Roland be taken and cared for by Gertrude V. Cook and her husband, Harold C. Cook. Defendant Gertrude V. Cook testified:

"She told me if that child was born and she did not come home [from the hospital] I was to take care of it always.

"*The Court:* Was Mr. Brown there when this conversation took place?

"*A.* Yes, he was there."

Gertrude V. Cook also testified:

"*Q.* Did Ernest Brown drive you to the Mt. Carmel Hospital to get Roland?

"*A.* Yes, he did.

"*Q.* Did he say anything to you at that time relative to who should keep Roland?

"*A.* Yes; he wanted me to keep him.

"*Q.* What did he say to you?

"*A.* Well, he said that Beatrice told him before that—I will tell you in plain English: he said, 'There is Alma and there is Esther,' and he said, 'and my sister, and he preferred me because they gave me the child,' that is what he said."

Also:

"Are you eager and anxious to furnish a good home for Roland?

"*A.* Oh, yes.

"*Q.* Do you bear parental love and affection for Roland?

"*A.* Yes.

"*Q.* Would you state just what your feelings are for Roland?

"*A.* I love him like my own son.    *    *    *

"*Q.* Does your husband, Harold C. Cook show love and affection for Roland?

"*A.* Yes.

"*Q.* Does he show a fatherly love and care for Roland?

"*A.* Yes.

"*Q.* Does he treat him the same as though he was his own son?

"*A.* Yes."

Defendant Harold C. Cook testified:

"*Q.* Have you always loved the boy since you have had him?

"*A.* I have greater love for him than I have for anything else.

"*Q.* Do you love him the same as though he was your own son?

"*A.* Yes, sir."

Roland Brown has been living in the home of Gertrude V. Cook and Harold C. Cook practically ever since he left the hospital shortly after his birth.

The record is highly persuasive that the Cooks both are very fond of Roland and are able to furnish and uniformly have furnished to Roland Brown a very complete and proper home and are giving him a good bringing up.

Plaintiff has paid nothing to defendants for the care, support and expenses of Roland during his more than 6-years' stay with the Cooks but says he has often offered so to do and has always been refused. Roland was registered at school as Roland Cook.

Plaintiff, Ernest E. Brown, married his present wife, Ebba W. Brown, June 3, 1950. She is a partner, at least in name, in a firm of architects consisting of her father, J. E. Wicks, and herself, in Astoria, Oregon. She entered Cranbrook (in Michigan) in January of 1945 and was awarded her master's degree with honors in May, 1946.

Plaintiff's mother who had been caring for his other sons most of the time, died October 6, 1953.

This suit was begun November 20, 1953.

Mrs. Ebba Brown testified:

"*Q.* Now, is it your wish and desire that the child, Roland, come and live with you and the plaintiff and the other 3 boys, to complete the family unit?

"*A.* Very definitely, and we all feel it strongly.

"*Q.* You feel that you could give him motherly love and affection that exists between a natural mother and a natural son?

"*A.* Yes. * * * I heard my husband testify that he did not ask to take Roland home with him until after my husband's mother died. I heard him say he intended to take Roland home with him 'when he could redeem his son.' He said out of deference to his mother's feeling he preferred not to rip the family asunder by pushing the issue."

·Gertrude V. Cook testified:

"*Q.* (By Mr. Schrot [attorney for defendants]) Coming down and talking about the boys, when did Ernest say something to you relative to his wife's treatment of the boys?

"*A.* He said she was very rough on them at times.

"*Q.* About when was it?

"*A.* Right after he married her, later, too.

"*Q.* What did he say relative to his wife's treatment of the children?

"*A.* Well, he did not like her running Dale down the hall when he cannot get along very fast in the morning to get ready for school.

"*Q.* Did he say anything about whether she was kind or indifferent towards them?

"*A.* Well, he said she was real rough on them; she did not make a good mother but she was a good wife."

Ernest E. Brown's average income during the 5 years preceding the hearing has been between $8,500 and $9,000 a year. He is about to terminate his residence in the Detroit vicinity and to take up his residence in Oregon. If the custody of Roland were given to his father, it would mean that Roland, now about 8 years of age, would be taken to entirely strange and new surroundings away from all the persons, except his father and stepmother, with whom he has been acquainted so far in his lifetime.

The trial court found:

"The ability and fitness of the respective contending parties is not seriously questioned in the record. We may assume plaintiff and his wife give every assurance that the child will be properly cared for in a suitable home if they were given its custody. It is conclusively shown that the Cooks have done so and are so doing. In their case it does not rest in probabilities. While with them, the boy, during the earlier years of his tender childhood, has lacked

nothing which a child should have. He has been patiently and affectionately nurtured and tendered, and all his wants provided for. When he was small and helpless, and the burden of his rearing heaviest, they faithfully and freely discharged every parental duty towards him. With the passing years of patient watching over him as the little child of this dead sister-in-law, he grew in their affections and became to them as their own child.

"Not only do the interest and affection they have shown, and the care and support they have given him, entitle them to some consideration as against a prospect, but they give assurances for the future. What they have done tends to show what they are willing to do and will do. Their pecuniary condition is ample to enable them to provide for his maintenance and education during minority and much more if so inclined. There is nothing to indicate any financial advantage to Roland in change of custody, or that he will in any way be better educated, trained, or treated, or his welfare in any particular be promoted if he is taken from his present home and compelled to go with plaintiff. He is well provided for now. * * *

"In the case of *In re Gould,* 174 Mich 663, 672, the Michigan Supreme Court referred with approval to *Pool* v. *Gott,* 14 Law Reporter 269 (a Massachusetts case) as instructive in this type of case.

" 'Pool, the petitioner for writ of habeas corpus, had married the only daughter of respondents, and, she having died, their infant child was left by petitioner in the custody of its grandparents—a course agreeable to all parties, but without any definite arrangements being made as to length of time the child should remain or who should provide for its maintenance. The grandparents supported and cared for the child as their own. Some years later Pool remarried, and, having established a home for himself, sought to reclaim his child. The opinion in that case, delivered by Chief Justice Shaw, radiates the prevalent tone of our best authorities on

the interesting and delicate subject of the right of custody of infants as between near relatives. On a review of the whole case from every angle, it was held that the child should remain in the custody of its grandparents, to whom it was devotedly attached and with whom it preferred to live; the leading principle being that, when the right of the parent is not clear and imperative, the best interests and happiness of the child must always control the decision of the court.' * * *

"Roland is now situated in a home where he is amply provided for, happy and contented. To change his home now, to my mind, would lead only to unhappiness and confusion of this young boy."

In *Greene* v. *Walker,* 227 Mich 672, we say (syllabus 1):

"In habeas corpus proceedings by a father to obtain the custody of his 9-year-old daughter, evidence that the daughter had been in the custody of her grandmother and aunt ever since the death of her mother when she was only 13 days old, that the father has never paid a cent toward her maintenance or support or shown any interest in her previous to the institution of these proceedings, and that she has a good home, *held,* to justify the conclusion of the circuit judge that her best interest requires that she remain where she is."

As to the interests of the child being paramount in cases like the instant case, see, also, *In re La Croix,* 160 Mich 531; *Ex parte Bush,* 240 Mich 376; and *Moore* v. *Powers,* 241 Mich 567.

The rule governing our consideration of testimony in habeas corpus proceedings is illustrated in the case of *In re Courtright* (a habeas corpus proceeding), 167 Mich 689, 693, where we say:

"We are satisfied from our examination of the testimony that his [the trial court's] findings of fact are fully sustained, and that the best interests of

the child require that she be restored to her foster parents."

In the instant case it is our judgment that the evidence clearly sustains the trial court's finding that Roland Brown would be happier and better satisfied to remain in the custody of the Cooks and thus his personal interests require that he be left in the custody of Mr. and Mrs. Cook. A careful examination of all the testimony in this case leads to the conclusion that plaintiff when he directed that Roland be placed in the hands of Mr. and Mrs. Cook for his custody, care and maintenance, did not expect to ask for the return of that custody to himself and by his words and actions at the time, and subsequent thereto, plainly gave his sister, Mrs. Cook, to understand that he was not going to demand the return to him of the custody of Roland.

In all the 6 years that elapsed subsequent to the day that Roland left the hospital where he was born, his father, the plaintiff, did not take over the custody of his little son, acquiesced in his sister's receiving nothing for his son's support, and left his son with his sister, she furnishing all the son's care and support. He did not insist on his paying one penny in fact therefor. During this time the father had a handsome income. His whole conduct is highly persuasive that he was giving Mrs. Cook to believe that Roland's stay in her home was permanent. It would be cruel to Roland to remove him from his present happy home.

The interest of Roland requires that he be left in the custody of Mr. and Mrs. Cook. The judgment of the trial court denied the petition for a writ of habeas corpus. That judgment is affirmed. Costs to defendants Cook.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, DETHMERS, and KELLY, JJ., concurred.