*In re* ADAMS.

1. INFANTS—RES JUDICATA—HABEAS CORPUS—COURTS—JURISDIC-
TION—DEPENDENT CHILDREN.

Proceedings under an inappropriate statute before the probate court, to which the father was not a party, declaring his four-year-old daughter, whose mother was dead, to be a dependent and neglected child, and adoption based on such proceedings, furnished no protection against an investigation by the circuit court in *habeas corpus* proceed-

ings and an award of custody of the child according to her best interests.

2. SAME—PARENT AND CHILD—GUARDIANS.
The law makes the father the guardian of his daughter by nature and for nurture, and *prima facie* entitled to her care and custody.

3. SAME—CUSTODY OF CHILD TO FATHER.
Bearing in mind also the child's best interests, the courts will primarily feel bound to restore the custody where the law places it, with the father, unless in a clear and strong case of unfitness on his part to have such custody.

4. COURTS—HABEAS CORPUS—INFANTS—JURISDICTION—CUSTODY OF CHILD.
Where the circuit court originally took jurisdiction in *habeas corpus* proceedings, and awarded the custody of a child to one other than the father because of his unfitness, "until further order of the court," said court is still open to him to show changed conditions and that his unfitness no longer exists, and the Supreme Court will not assume original jurisdiction in the matter by writ of *habeas corpus*.

*Habeas corpus* proceedings by Charles F. Adams against William Hulbert, Allie M. Hulbert and John B. Montgomery, superintendent of the State public school, to obtain the custody of Donavieve Adams, his daughter. Submitted April 5, 1921. (Calendar No. 29,655.) Writ denied June 6, 1921.

*Bunker, Rogoski & Dunn,* for plaintiff.

*Clare E. Hoffman,* for defendants' Hulbert.

*Merlin Wiley,* Attorney General, and *Clare Retan,* Assistant Attorney General, for defendant Montgomery.

STEERE, C. J.   Charles F. Adams made application to this court in legal form for a writ of *habeas corpus* to obtain custody of his daughter, Donavieve

Adams, a child born December 6, 1914, charged to be illegally restrained of her liberty and from his custody by William Hulbert and Allie M. Hulbert, his wife. It appears from said writ, together with return to same and to an auxiliary writ of certiorari issued to the probate court of Allegan county in connection therewith, that Charles Adams was, and had been for some years, a resident of North Muskegon, Muskegon county, where his wife Bessie Adams died on October 18, 1917, survived by her husband Charles and daughter Donavieve, then about 3½ years old. Her body was taken to her former home in the village of Otsego, Allegan county, for burial. Allie M. Hulbert, her sister, and her husband, William Hulbert, resided in the township of Otsego in said county. Shortly after his wife's burial Adams left his daughter Donavieve with the Hulberts in charge of her aunt, at their request and with the promise she would be returned when called for by Adams or his mother, as he claimed. This the Hulberts deny, claiming he simply left the child with them, after which he neglected and did nothing for her. They refused to surrender her when requested and Adams made several unsuccessful demands of them for her, which it is indicated resulted in much ill feeling between them. In February, 1918, he went to the Hulbert home accompanied by his mother and the sheriff, and there made a demand for custody of his child which they again refused. Soon thereafter on February 13, 1918, William Hulbert petitioned the juvenile division of the probate court of Allegan county in behalf of said "Donavieve B. Adams, dependent and neglected child," stating she was in the custody of himself and wife, that her mother was dead and her father had "not taken care of her for at least three months, perhaps four,    *    *    * appears only at intervals to demand the custody of

the child" and gave several reasons why, as deponent thought, "something should be done to deprive him of the right of said child." Thereupon further proceedings were had ostensibly under the statute providing for disposition of dependent and neglected children, resulting in the court declaring Donavieve Adams "a dependent and neglected child and a ward of the court," and committing her as such to the State public school at Coldwater. This was followed with alacrity by an application of the Hulberts to that institution for custody of the child and an agreement in customary form signed by the superintendent of the school and Mrs. Hulbert appointing her guardian of and committing the child to her care and custody until 18 years of age. Later, based on consent of the superintendent of said school and the county agent of Allegan county, the Hulberts obtained letters of adoption of the child from the probate court.

These matters were all *ex parte* so far as the child's father was concerned. He had long been a resident of Muskegon county and claimed to have been in Allegan county when proceedings were commenced in the probate court. There is no proof he had knowledge or notice of them while they were pending. He subsequently filed a petition in the probate court for dismissal of the order declaring his child dependent and neglected, on the ground it was obtained by fraudulent representations and the court imposed upon thereby, which the probate court refused to entertain because "more than 90 days have elapsed since the making of said order." From this he did not appeal, but in the latter part of 1919 made application to the circuit court of Allegan county for and obtained a writ of *habeas corpus* to inquire into the cause of detention of his child by the Hulberts.

Two defenses were interposed against the right of

the father, *first,* that the probate proceedings were *res adjudicata* and the inquiry could not be pursued further; and, *second,* that the father was not a fit person to have the custody of his child, which was necessarily a question of fact. On the hearing the circuit court apparently gave little weight to the probate proceedings, but heard the testimony of the respective parties upon the question of the father's charged abandonment and neglect, his situation, character, fitness, ability to provide, care for and rear the child in proper environments, etc., concluding upon the showing then made it was for the best interest of the child that she remain in the custody and under the care of William Hulbert and wife "until the further order of the court," subject to right of the father to visit her at stated times.

Of the probate proceedings, palpably initiated by Hulbert under an inappropriate statute as a means of retaining custody of the child under color of law, it is sufficient to say they furnished no protection against an investigation by the circuit court in *habeas corpus* proceedings and an award of custody of the child between the contending parties according to her best interests, and adoption based on such proceedings is on no firmer grounds. It would seem that in the course pursued in those proceedings the *Gould Cases* were overlooked. *In re Gould,* 171 Mich. 540; 174 Mich. 664. The circuit court of Allegan county had jurisdiction to determine the matter. No application was made to review the same. Its award was made under then found conditions, to stand until further order of the court. Conceding the decision was conclusive under the then shown conditions it was yet left open to the further order of the court, not a final judgment against an application for another writ based on changed conditions with a further or different showing to meet

the facts found by the court to prevail against the natural rights of the father to the custody of his own offspring. The law makes him her guardian by nature and for nurture, *prima facie* entitled to her care and custody. Bearing in mind also the child's best interests, the courts will primarily "feel bound to restore the custody where the law places it, with the father, unless in a clear and strong case of unfitness on his part to have such custody." *Commonwealth* v. *Briggs*, 16 Pick. (Mass.) 203. Where not precluded on other grounds, the court which held him unfit may entertain an application to show that the unfitness by reason of which custody was denied has been removed.

In this proceeding applicant represents he can show by numerous credible witnesses not only that the aspersions against his habits and conduct to which the circuit court gave heed are not well founded, but also that changed conditions eliminate the reasons recognized by the court at that time as persuasive against him; that he now has steady employment at good wages, is married and established in a comfortable home with a wife of kindly disposition and good character who joins in his desire to have his child with them, and that they are ready, able and anxious to take, provide for and rear her in a good home with proper environments and training.

To that end the circuit court which originally took jurisdiction, issued process on his application and disposed of the matter "until further order of the court," is yet open to him. Under such circumstances this court will not assume original jurisdiction in the matter by writ of *habeas corpus*.

The writ is denied.

MOORE, WIEST, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.