BIRD v. BIRD.

HABEAS CORPUS—CUSTODY OF INFANTS—STAY OF PROCEEDINGS.

Mother's petition for habeas corpus to obtain custody of infant born four months after her marriage to the child's father is ordered dismissed where her attitude toward the child before her marriage and before and after its birth has been one of indifference and trial court's order giving custody to mother was made after Supreme Court had ordered all proceedings stayed.

Appeal from Monroe; Golden (Clayton C.), J. Submitted January 7, 1944. (Docket No. 69, Calendar No. 42,450.) Decided February 24, 1944.

Petition by Lola M. Bird against William Bird and Gladys Bird for a writ of habeas corpus to determine custody of minor child. Defendants review order granting writ by appeal in the nature of certiorari. Reversed and remanded.

*John W. Conlin,* for plaintiff.

*Burke & Burke* and *Jacob F. Fahrner,* for plaintiff.

WIEST, J. (*concurring*). Under writ of habeas corpus, plaintiff's girl baby, six months of age, was taken from the custody of the grandparents and awarded to her. The parents of the baby were married on August 3, 1942, and on December 6, 1942, the baby was born at a hospital in the city of Ann Arbor. Being subject to the war draft the father left to join the navy the day after the baby was born and the mother went to live with the parents of the father. The mother of the baby left that home on February 9, 1943, went to live with her married sister on a farm and, on March 23, 1943, sued out this writ of habeas corpus to obtain custody of the child from the grandparents. On June 23, 1943, she was, by order of the court, awarded custody of the baby. Review is by the grandparents, the father not being made a party and at the time of the hearing being still in war service.

We have examined the testimony and from it have reached the conclusion that in the home of the grandparents the baby was well cared for and nurtured and if it remains there will receive the proper loving attention and care. The ultimate fact to be determined is the welfare of the baby. Before her marriage the mother of the baby did not want it, evidently because of the possibility of its being a

bastard, but we pay little attention to remarks to that effect made by her previous to marriage. But there is evidence that after the marriage she still did not want the baby and after its birth she was neglectful of its care and apparently disliked it. Plaintiff left the home and tried to work in a munitions plant but only remained there a short time. At the time the court awarded the custody of the baby to plaintiff she was living with her married sister in surroundings not conducive to the continued welfare of the child.

The friend of the court who was directed to investigate and make report, found the baby and the mother at the home of her sister, Mrs. Crawford, who, with her husband, operate about 300 acres of land and a stock farm. The sister and her husband occupy the lower floor of the farm dwelling house and have two bedrooms, living, dining and bath rooms. All the rooms are well ventilated and well furnished and the housekeeping appeared to be good. He further reported:

"The home can be recommended for the purpose, providing, Mrs. Lola Bird, mother of the child in question, continues to make her home with Mr. and Mrs. Crawford, or, until her husband returns from the U. S. service, as you will notice the Crawfords have two infants of their own to look after and if all the work is left to Mrs. Crawford, the Bird child may be neglected. On the other hand, if Mrs. Bird leaves her child to be cared for by Mrs. Crawford while Mrs. Bird is living or working elsewhere, this condition would be rather precarious for the child. Mrs. Crawford is not a very strong person and has a very nervous disposition."

After their marriage on August 3, 1942, the young couple lived with the husband's parents and while there and before the baby was born the prospective

mother of the baby stated to her mother-in-law, ''I won't say that I won't kill it but I do not want it.''

The day after the baby was born the hospital authorities required the removal of the mother on account of her indifference to the welfare and safety of the baby and retained the care and nurture of the baby for two weeks. The mother was removed by ambulance to the home of defendants where she received excellent care. About two weeks later the baby was taken to defendants' home and, until removed from their custody under the writ herein, was given loving care and attention, which they desire to continue.

Plaintiff's conduct toward her helpless infant was one of indifference, to say the least, and evidences lack of normal mother instincts of love and nurture. The home where she now has the baby is one of tolerance at the will of the sister, to whom she did not even speak for a period of four months, even when they met the year before she took the baby there.

The welfare of this infant, her nurture and care now and in her future helpless state, is our judicial duty to safeguard and, in our opinion, based on the evidence, this commands reversal of the order awarding custody of the baby to her mother, dismissal of the writ and return of the child forthwith to defendant grandparents. No costs.

BUSHNELL, J., concurred with WIEST, J.

BOYLES, J. I concur in reversal and in dismissing plaintiff's petition for the writ of habeas corpus. Justice WIEST writes that this baby was taken from the custody of the grandparents and returned to plaintiff under a writ issued by the circuit judge, and Justice WIEST directs the return of the child

forthwith to the defendant grandparents. While the circuit judge entered an order adjudging that plaintiff was entitled to the custody of said infant and directing the defendants to deliver her to the plaintiff, this order was stayed by this court on June 10, 1943, at which time all further proceedings in the court below were stayed by this court. On September 8, 1943, when leave to appeal was allowed, by order of this court this stay of proceedings was continued until the further order of this court. This baby has been and still is in the custody of the defendant grandparents. The case should be remanded to the lower court with directions to enter an order dismissing plaintiff's petition, with costs to defendants.

North, C. J., and Starr, Butzel, Sharpe, and Reid, JJ., concurred with Boyles, J.