*In re* ERNST.

1. PARENT AND CHILD—NATURAL PARENT'S CUSTODY OF MINOR CHILD
   —GRANDPARENTS.

   Habeas corpus petitioner, seeking actual custody of his daughter, now 4-1/2 years old, from maternal grandparents who had had custody of the child since she was a year old, should be granted custody, where circuit judge found he was not an unfit person and it is not disputed that he has re-established a suitable home upon his remarriage.

2. SAME—PARENTS VERSUS NONPARENTS—REBUTTABLE PRESUMPTION
   AS TO CHILD'S BEST INTEREST—PARENTAL CUSTODY.

   Child's best interest is predominant, if not sole, judicial concern in determining who shall prevail in custodial contest, and when contest is between parent and nonparent, parental custody is rebuttably presumed to be in child's best interest.

3. SAME—NONPARENT—UNFITNESS OF PARENT—NEGLECT—ABANDON-
   MENT.

   A natural parent should not be deprived of its child's custody by a nonparent except upon a finding of unfitness for the exercise of parental responsibility, of parental neglect, or of abandonment.

4. SAME—PRESUMPTIONS—BEST   INTERESTS—CUSTODY   OF   MINOR
   CHILD.

   A father's right to and authority over his minor child are secure and inviolable so long as he properly discharges the correlative duties, it being presumed that the best interests of the child lie with his natural parent's exercise of custodial rights, absent a showing of such parent's unfitness, neglect, or abandonment of the child.

REFERENCES FOR POINTS IN HEADNOTES

[1–5]  25 Am Jur, Habeas Corpus § 78 *et seq.*
   27 Am Jur, Infants § 108 *et seq.*

5. SAME—HABEAS CORPUS BY FATHER—CURRENT SUPPLEMENTAL REC-
ORD.

> Trial judge's order denying father's petition for habeas corpus
> to obtain custody from maternal grandparents of his daughter
> then 2–1/2 years old, now 4–1/2 years old, is ordered reversed,
> and on remand reconsideration had by the trial judge after a
> supplementary testimonial record has been made.

BLACK, J., dissenting.

Appeal from Emmet; Fenlon (Edward H.), J.
Submitted October 11, 1963. (Calendar No. 41, Dock-
et No. 50,274.)   Decided July 8, 1964.

Habeas corpus by John C. Ernst against Martin
Flynn and May Flynn to secure custody of his daugh-
ter, Gerri Ernst.   Petition denied.   Plaintiff ap-
peals.   Reversed and remanded for the making of
a further testimonial record and reconsideration by
the trial judge in the light thereof.

*Howard H. Campbell,* for plaintiff.

*McGinn & Menefee,* for defendants.

BLACK, J. (*dissenting*).
> "A child is not a chattel nor
> subject to ownership as such."[1]

As 1964 has brought another change of our per-
sonnel, a little child may lead the remaining parent-
minded—distinguished from child-minded—Brethren
from out that legal fog into which they seem to stray
when a child custody case arrives here.   That child
could be little Gerri Ernst.   And if Gerri, armed
as she is with innocence and supreme legal right,

---

[1] From the copied and affirmed opinion of Circuit Judge Hawley;
*Greene* v. *Walker,* 227 Mich 672, 675.   The proceeding was habeas
corpus, sued out by father for custody of daughter against the child's
aunt.   See discussion of the *Greene Case, infra,* along with *Ex Parte
Bush,* 240 Mich 376.

cannot get through to such Brethren as her case comes to decision, then the probate and circuit judges of Michigan—by what they have done and are now doing—ultimately will get across to all of us an indelible fact; a fact which, no matter how long judicial ears are covered and judicial gaze is averted, no member of this Court can ignore much longer.

*First:* Our probate and circuit judges, confronted as they have been in recent years by 2 irreconcilable lines of cases,[2] manifestly and righteously are deciding that they must continue to follow the overwhelming weight of Michigan authority. Witness Judge Falahee in *Herbstman;* Judge Breakey in *Paton;* the Washtenaw probate and circuit judges in *In re Mathers,* 371 Mich 516; Judge Bowles in *Potter* v. *Potter,* 372 Mich 637;[3] Judge Baum in *Kaiser* v. *Kaiser,* 373 Mich 31, and now Judge Fenlon in this case of Gerri Ernst. All have decided today's issue by ascertaining and then applying the answer to a rightfully controlling question: What is best for the child?

That question and its ascertained answer will continue to govern in our lower courts until this Court, if it ever does so by majority vote, flatly and openly overrules the line of cases commencing with *Corrie* v. *Corrie,* 42 Mich 509, and ending most recently with *Kaiser* v. *Kaiser, supra.* Surely, with the handing down of *Potter,* and comparison of judicial signatures thereof with cases like *Herbstman* and *Mathers,* our circuit and probate judges are entitled to ask of my parent-minded Brethren, again as in I Kings, 18:21, "How long halt ye between two opin-

---

[2] Compare *Herbstman* v. *Shiftan,* 363 Mich 64, and *Paton* v. *Paton,* 363 Mich 192, with that long line of cases which commenced with *Corrie* v. *Corrie,* 42 Mich 509, and has been carried to date by *Potter* v. *Potter,* 372 Mich 637.

[3] The initial sentence of Judge Bowles' painstaking opinion of the Potter child custody issue, pursued by him as it was to eminently proper conclusion, reads: "The polar star in determination of child custody is the welfare of the child."

ions?", or, as the revised standard version has it,
"How long will you go limping with two different
opinions?"

By no means does the foregoing suggest contumacious conduct of subordinate court judges. They
simply maintain course by following the nationally
sensible weight of *law* as written rather than the
errant *results* of certain temporary crotchets our
reports on recent occasions have disclosed. I, too,
refuse to regard such temporal aberrations as obligatory and will continue thus until (if it ever happens) flat overruling of the *Corrie* through *Kaiser*
"best interests" doctrine takes place. Should that
occur, then and only then will I consider it my duty,
and that of our probate and circuit judges, to rule
in child custody cases that a parent's legal right controls over the best interests of the child whose custody is in issue.

We of this Court know not how many more circuit
and probate judges are continuing to follow the
*Corrie* through *Kaiser* rule. We may estimate well,
however, judging from the foregoing. For every
like case arriving here on appeal there must be hundreds which, for want of the wherewithal for appeal,
have come and are coming to final decision in probate or circuit. That is the critical reason for pertinently *certain* precedent as well as good precedent,
and that is the reason for the steady challenge someone here must register: "Overrule *Corrie* and like
cases or conform thereto."

*Second:* In the case before us Judge Fenlon found,
firmly and without reservation, *that Gerri's best interests require that she remain in the home of and
under the care of her maternal grandparents.* That
part of the judge's findings is completely ignored
in the proposed *per curiam* opinion for reversal.
That opinion seizes instead upon Judge Fenlon's
statement (taken out of context from the center of

a long paragraph) that "I certainly can't find from the testimony that Mr. Ernst is an unfit person." Then follows—in the *per curiam* opinion—a proposed holding that such parental fitness is decisive of right on the part of Mr. Ernst to custody of Gerri. But what of Gerri's best interests? Why, so far, there is not one word of concern, in that opinion, for such interests. There seems to be much concern, though, for the interests of Gerri's 3-time wed father, into whose home the *per curiam* opinion would thrust Gerri with 4 strange children of 2 separate marriages and a strange stepmother.

The present Mrs. Ernst brought to the Ernst home 2 children of her first marriage, and Mr. Ernst brought to the home 2 children by his first of 3 marriages. There is, too, as admitted by Mr. Ernst on cross-examination, the "possibility" of more to come, his age and the age of his present (third) wife considered. And then, too, Gerri's social security check seems to be of interest to Mr. Ernst. That check has been regularly deposited, by the grandparents, to Gerri's credit for Gerri's education. There is no commitment by Mr. Ernst, in the record, to continue such deposit.

This is not all. As in *Greene* v. *Walker, supra,* Gerri's mother died ultimately as a result of Gerri's birth, Gerri meanwhile remaining with the grandparents. Here, too, as in *Greene,* the hospitalized mother declared her dying wish with respect to Gerri. One of the floor supervisors of the hospital is testifying:

"*A.* * * * Rosemary [Gerri's mother] was a friend. I have talked with her many times, both in the hospital and out.

"*Q.* All right, was she confined to the hospital during her last illness continuously from the time she entered up to date of her death?

"*A.* Yes, sir; she was.

"*Q.* How long a period of time was she confined in the hospital?

"*A.* Gosh, I am not sure. At the time I would say probably 4 or 5 weeks, but I am not sure on that.

"*Q.* Did she realize her condition when she was in the hospital?

"*A.* Yes. She was told her condition before her baby was born, that her life was in danger. She knew that.

"*Q.* She knew that pregnancy could possibly result in the loss of her own life?

"*A.* Yes; she was told that.

"*Q.* Did you have any conversations with her relative to the up-bringing of her child?

"*A.* Oh, many times. And, there were many others in the hospital that she talked to also, and she said that her one concern was that her husband wouldn't get the child, and she knew he didn't want her, that it would be only out of spite; that his mother wanted her, but she was scared to death that that would happen, and she felt it wasn't good for the child. And that is what she seemed more concerned about than anything else."

There is more in the record to the merit of the best interests of this child. But there is no occasion for detail thereof since our province, on appeal in the nature of certiorari to review habeas corpus, is not that of a fact weigher and finder. Our task instead is simply that of determining whether there is evidence supportive of the order brought here for review. I turn to such legal point.

That there is such supportive evidence no counsel, and no member of this Court, has undertaken to deny.[4] In such circumstances we have no right— no right whatever—to overrule or disregard Judge Fenlon's finding and order upon the best interest

---

[4] Since this opinion was written Justice SOURIS, writing separately, "has undertaken to deny" this. For comment see supplemental opinion, *post.*

question; "the determination of the judge as to the facts being conclusive." Attest: *Corrie* v. *Corrie, supra,* followed to the point in *In re Sneden,* 105 Mich 61 (55 Am St Rep 435); *Carpenter* v. *Carpenter,* 149 Mich 138; and *In re Gould,* 174 Mich 663. Apparently, though, some of my Brethren have decided that this Court may and should—of insouciant will— consider these habeas corpus cases *de novo* and decide that the naked right of a "fit" parent is superior to the child's right to have its best interests judicially ascertained and upheld.

Now if such *de novo* hearing is to be the "law," better that we summon Gerri and all witnesses into our Court for examination, interview, and personal appraisal before undertaking judgment afresh and anew; also that we independently investigate and appraise both the present and the proposed home life of little Gerri. Our judgment then might attain a plane equal in value to that of the circuit judge below; the judge who has certified to us that Gerri should stay where she is. Until that at least is done, I propose to stand by the cited rule of review; that this Court, on certiorari bringing up circuit court habeas corpus testing child custody, does not hear or try the certified cause anew, and that its limited function is ascertainment, on due assignment, whether an error of law has been committed. I find no such error here.

*Third:* In recent *Mathers* (371 Mich 516, 539, 558) this Court divided 3 ways with respect to result as well as reasoning. The case arrived here on appeal from jury tried chapter 12A issues;[5] circuit court verdict and judgment of child neglect having been entered against the mother of a fatherless child. On that occasion the prevailing opinion, signed by Jus-

---

[5] The reference is to chapter 12A of the probate code, as added by PA 1944 (1st Ex Sess), No 54 (CL 1948 and CLS 1961, § 712A.1 *et seq.* [Stat Ann 1962 Rev § 27.3178 (598.1) *et seq.*]).

tices Smith, Dethmers, Kelly, and former Chief Justice Carr with present Chief Justice Kavanagh concurring in the result, deigned no reference to or respect for the rule that the best interests of a custody-torn child are paramount. In that case, dissenting, I collected most authority extant to the point of pre-eminent child welfare, omitting however (the issue having arisen under said chapter 12A) certain authorities dealing specifically with circuit court habeas corpus for child custody. Such authorities are to be found assembled in previously mentioned *Greene* v. *Walker,* 227 Mich 672, and *Ex Parte Bush,* 240 Mich 376. These cases—*Greene* and *Bush*—cast the true light of guidance for disposition here of the instant petition for habeas corpus.

In the first of such cases the father of Anna Katherine Greene sued out habeas corpus for custody of Anna. The writ was directed to the child's aunt, Ernestine Walker, with whom—and a grandmother —the child had lived since she was 13 days old (here, Gerri has lived with her maternal grandparents since the commencement date, when Gerri was 5 months old, of her mother's terminal illness). Mr. Greene took the same position as does Mr. Ernst, father of Gerri. That position was related in *Greene* (pp 673, 674) this way: "Counsel for the plaintiff insist that as their client has shown he is the father of the child, and is competent to transact his own business, that as a matter of law he is entitled to custody of the little girl." Circuit Judge Hawley, presiding at hearing upon the writ, prepared and filed a fully informative finding of fact. It appears in *Greene's* report, pp 674–677. Judge Hawley's upheld conclusion was:

"In my judgment the best interest of the child imperatively requires that she remain where she is and accordingly the writ of habeas corpus is denied."

This Court, relying upon many of the authorities cited in my *Mathers* dissent, laid stress (p 679) upon Justice Steere's epitome (*Weiss* v. *Weiss,* 174 Mich 431, 438), namely:

"While the wishes and affections of the parents for the child are not to be ignored, they are a secondary consideration. The primary consideration is the welfare and happiness of the child, from the standpoint of education, moral and religious training, good influences, care, kind treatment, pleasant environments and future prospects."

Judge Hawley's finding and order for dismissal of the writ were, as noted above, duly affirmed. This Court's opinion distinguished (p 681) *In re Goldinger,* 207 Mich 99, and *In re Adams,* 214 Mich 199, which 2 cases were cited in *Herbstman* v. *Shiftan,* 363 Mich 64, 68, 69, as supporting what was done in 1961, by our then majority, to little Hanna Herbstman.

A continuing part of Judge Hawley's opinion in the *Greene Case* is worthy of repetition here, the facts being so nearly identical (p 675 of report):

"I have no question but what the Greene home is one of refinement, pervaded by a Christian atmosphere, and one in the confines of which a child would derive no harm.

"The home of the respondent is at least equal in all these requisites to the home which petitioner seeks to take his daughter.

"I realize how desirable it is that this child should come into more familiar contact and association with her brother and with her father, but I think that there are other considerations which are more vital to the child's welfare and more controlling in this case than either or any of these.

"I also realize that ordinarily the parent has and should have a superior right to the custody of his child and that his poverty or lack of financial means

should not be given any great weight to deprive him of this natural right, but I also realize that the rule of superior right is not a hard and fast rule. A child is not a chattel nor subject to ownership as such.

"The paramount question under the law in all cases of this character is the welfare of the child. All other considerations must yield to this one. The dying wish of the mother, the desire and purpose of the father, the otherwise superior right of either father or mother even the wish of the child herself, are and must not be entirely controlling."

Turn now to *Ex Parte Bush,* 240 Mich 376. On that occasion Superior Court Judge Verdier erroneously concluded, in a like proceeding, that he was bound by the "naked" legal right of the petitioning mother. The judge issued, accordingly, a writ of habeas corpus in favor of the 6-year-old child's mother, Mildred Anderson Bush, against the child's grandfather, Peter Plantenga. Certiorari to this Court brought reversal of Judge Verdier's order with remand for hearing of the overlooked vital issue, that is, the best interests of the child.

The case is presently helpful in that it recommitted this Court to that worthy precept which governs (or at least should govern) all cases where a child's rights and interests are beset by competitive claims of custodial right. Having quoted the correct rule from Corpus Juris (29 CJ Habeas Corpus, § 101, p 108), the Court turned to *In re Gould,* 174 Mich 663, 670, and to 12 RCL Habeas Corpus, § 34, p 1215. The quotation from Ruling Case Law is instructive. The textwriter considered the equitable nature of habeas corpus involving minor children and then, after having written that courts are "not bound by any mere legal right of parent or guardian," proceeded as follows:

"Therefore these cases are not decided upon the legal right of the petitioner to be relieved from un-

lawful imprisonment or detention, as in the case of an adult, but upon the court's view of the best interests of those whose welfare requires that they be in custody of one person or another; and hence a court is in no case bound to deliver a child into the custody of any claimant or of any person, but should, in the exercise of a sound judicial discretion after a careful consideration of the facts, leave it in such custody as the welfare of the child at the time appears to require."

I borrow at this point some expressions from Justice Holmes' historic dissenting opinion of the *Northern Securities Case* (*Northern Securities Co.* v. *United States,* 193 US 197 at 400, 401 [24 S Ct 436, 48 L ed 679]). What we have to do in this case is to find, from foregoing authority, the meaning of some not very difficult words. Our duty, indeed, is simply "to read English intelligently." The English quoted above seems most plain; also quite free from obscurity of meaning. How is it unclear, and must it be evaded in this case of Ernst?

*Summary:* The mills of appellate courts grind slowly. Too, they grind on occasion in strange ways, toward good and sometimes bad precedent. They are, sooner or later, influenced—if not disciplined—by the staunch attitudes as well as the consistent factual findings of judges of subordinate courts. Cited above, for all but the halt and the blind to touch and see, is a continuing record of constant refusal by able and respected judges to depart from a long series of precedents, tried precedents, worthy precedents, and nonoverruled precedents. Thus the opinion I oppose in this case of Ernst fights vainly against destiny. True, it may prevail currently, but only to the sad grievance of 1 little child. But it will not, in all probability, affect the hundreds of like cases where neglectful or spiteful parents, or abandoning parents, or social security covetous parents,

have carried their conduct so far as to bring into being a competitive and equitably superior right to which the law has allied its force; that of the child to judicial ascertainment of its best interests and due adjudication thereof.

Probably no more important cases arise in trial and appellate courts than those which determine the future of appealing little children. They are important enough, in any view, so as to require that my position be made grimly clear. Any time a probate or circuit judge certifies to this Court that the best interests of a child require that it stay in present custody, or that it go from present custody to that of a designated person or agency, I mean to accept that judge's judgment as measurably better than mine provided, of course, there is some—no, any—evidence of substance which tends to support the judge's certificate.

I regret that more members of this Court cannot see the acute need for self-control of the pertinent power which is confided to us. Never, no matter how anointedly learned we may conceive ourselves to be, can the distantly positioned members of this Court occupy as good a seat of judgment, in child custody cases, as does the seeing and hearing—and manifestly more knowledgeable—probate or circuit judge below. We should depend on the judgment of these judges, rather than upon some metaphysical notion that parental "fitness" is paramount and the child's welfare is not.

To settle this point, let it be noted from a long succession of initial pages of our reports that each of the circuit judges presiding in the *Paton, Mathers, Potter,* Ernst and *Kaiser Cases* was and is far more capably versed in the experience of making personal "on the scene" judgments, in every variety of these saddening child custody cases, than are all 8 members of this Court in total combination. Assume—

I said "assume"—that we are a bit more learned in the law. That assumption does not, however, place any one of us in the comparably better position of judgment the appointed weigher of testimony and appraiser of human beings enjoys below. As said in *Haley* v. *Ohio,* 332 US 596 at 624, 625 (68 S Ct 302, 92 L ed 224), by Justice Burton, dissenting:

"Until a better way is found for testing credibility than by the examination of witnesses in open court, we must give trial courts and juries that wide discretion in this field to which a living record, as distinguished from a printed record, logically entitles them. In this living record there are many guideposts to the truth which are not in the printed record. Without seeing them ourselves, we will do well to give heed to those who have seen them."

In this case of Ernst we confront a Cannae type of collision between a supported finding that the demanding parent is fit and a supported finding that the paramount interests of the child require that she remain with her grandparents. Which should prevail? A long line of decisions answers that the child's right must prevail over the parent's right. As was his duty in the absence of overruling of such decisions, Judge Fenlon rightfully applied them and dismissed the writ.

My vote to affirm is cast, without an award of costs.

SUPPLEMENTAL OPINION OF JUSTICE BLACK

The foregoing opinion for affirmance was submitted to other members of the Court April 21st last, promptly after our latest set of conflicting child custody opinions (*Potter* v. *Potter,* 372 Mich 637, 649, 650) was handed down on April 6th. Since then Justice SOURIS, standing for reversal, has written to "demonstrate"—as he says—that "there is order instead of the asserted chaos in our precedential de-

cisions." Since then—too—the originally submitted *per curiam* opinion for reversal, which opinion is mentioned several times in the writer's foregoing opinion, has been quietly withdrawn.

This latest opinion for reversal calls for additional comment upon the now even more aggravated plight of Michigan's trial judges; a perfect nonplus which Justice Souris highlights (albeit unintentionally) by flatly denying precedential disorder with explanation[6] that the cases dealt with by him in detail are just so many Tweedledums and Tweedledees. The briefest way to treat and meet such denied disorder is the method of quote and comment, employed last in *Hopkins* v. *Lake,* 348 Mich 382, 397–399.

1. Justice Souris says:

"One significant feature common to all child custody cases, regardless of the procedural label, is this Court's insistence upon the child's best interest prevailing as the predominant, if not sole, judicial concern. But, the standard by which we measure the child's best interest is not always the same in these cases."

*Comment:* Truer words were never said. Such is a pretty fair reason for affirmation, rather than denial, that "2 irreconcilable lines of cases" do face our trial judges, and such was *the* reason for Judge Fenlon's statement when counsel for the appellant parent insisted that there must be a showing, on the part of the appellee grandparental custodians, "that Mr. Ernst is an unfit person." Judge Fenlon said, connectedly:

"With reference to the question of law, Mr. Campbell, we will leave to the Supreme Court the decision of whether or not there must be a showing on the

---

6 "For thee explain a thing till all men doubt it,
And write about it, goddess, and about it."
[Pope, The Dunciad, book 4, line 249.—Reporter.]

part of the petitioner, or rather the defendant, to show that the petitioner is an unfit person. I certainly can't find from the testimony that Mr. Ernst is an unfit person. However, I have the decided feeling that the best interest of the child is the grandparent, under the showing made here and I think rather than wait to have production of cases which might counter your position, Mr. Campbell, as I understand it, being that in a petition by the natural parent, the parent should have precedence over anyone else, excepting where there is a showing that the petitioner is an unfit person."

2. Justice SOURIS, having referred to several of our decisions which to him are quite harmonious, says that all such cases "present for judicial determination the custodial disposition which will be in the child's best interest without requirement that the Court exercise the overwhelmingly awesome power to terminate, for all practical purposes, a mother's or father's parental rights and to isolate a child, again for all practical purposes, from the last vestige of the family unit into which the child was born."

*Comment:* Presumably this is intended to refer to, and with impact upon, the case before us. Now into just what "family unit" was Gerri Ernst born? Into that of her own mother and these appellee grandparents, or into the new "family unit" (for details see foregoing opinion at page 341 [373 Mich 341]) Mr. Ernst by third marriage has recently organized? And—surely this must be challenged—by what fact or authority does my Brother suggest that there is, by Judge Fenlon's reviewed order, a "termination, for all practical purposes," of Mr. Ernst's parental rights? Did not Judge Fenlon tell Mr. Ernst, in open court:

"Now, that doesn't preclude you, Mr. Ernst, from a later date possibly coming in here, because I am ruling primarily because the child is only 2–1/2 years

of age and primarily because of the showing made of the interest of the grandparent and the children of the Flynn family and the independent testimony of others, who so strongly support the position that the child was being well cared for."?

Further, is it not true that a custodial order in *habeas corpus* cannot possibly "terminate" the "parental rights" of a contending parent? Why even suggest such "termination," adjudicatory or otherwise? There may be many an unforeseen event, occurring since this record was made below or shortly after our judgment of affirmance or reversal, which would warrant a custodial best interest transfer of Gerri to her father or even to persons not now before the Court. Another Ernst divorce, another death or several deaths, illness or incapacity of some 1 of the contenders; all these and other presently unknown circumstances deny flatly any possibility of this bewailed "termination" of parental right.

3. Justice SOURIS quotes the legally couched letter of February 24, 1962, and its provisionally custodial indorsement by the appellee grandparents. I perceive from such (deposited and quietly left) quotation 1 purpose only. It is to leave impression that Gerri's future custody then and there became determinable by contract—not judicial ascertainment —the courts must recognize and enforce. There is a short and well known answer to this, found for example in *Lewis* v. *Lewis,* 338 Mich 197, 200: "He [the father] intimates that this is a contract. We dispose of that question at once. The Court is not bound by any agreement of parties in awarding the custody of children or making proper provision for their support."

4. Justice SOURIS concludes:

"Accordingly, Judge Fenlon's specific finding that Gerri Ernst's natural father, petitioner herein, was

not an unfit person for her care and custody compels our reversal of his denial of the writ."

No comment on this. Let it stand, denuded completely before an understandably curious bench and bar, for comparison with what, less than 2 months ago, Justice SOURIS and the writer attested together in *Potter* v. *Potter, supra* at 649, 650:

"Upon manifestly careful deliberation, supported by an equally careful analysis of supporting evidence, Judge Bowles found that the best interests of Donna Potter require that she continue in present care and present environment. Such finding, confirmed here as it is, exhausts the appellate function and calls for affirmance.

"There is no occasion for appraisal and judgment of the fitness or unfitness, as parent or custodian, of the appellant mother. The best interests of Donna are controlling regardless of such fitness or unfitness.    *    *    *

"I concur in affirmance on such settled ground, and do not join in the gratuitous test of the appellant mother's fitness for custody of Donna. The mother may be 'fit' as a legal fiddle; yet she is not entitled to the child's custody when the latter's welfare dictates that such custody, for the present as Judge Bowles has ruled, should remain where it is.";

and for further comparison with Justice SOURIS' conclusion of the opinion contributed by him, last fall, in *In re Mathers,* 371 Mich 516 at 560:

"So says our legislature in section 18 of chapter 12A.[7] In this respect proceedings under this chapter of the probate code differ from proceedings in habeas corpus where custody of children is the issue between contesting parties, one of whom claims the right to custody based upon technical legal rights and the other of whom claims custody on the basis

[7] CLS 1961, § 712A.18 (Stat Ann 1962 Rev § 27.3178 [598.18]).— REPORTER.

of present possession. Such cases abound in large numbers in our reports (*Matter of the Heather Children,* 50 Mich 261; *In re Stockman,* 71 Mich 180; *Greene* v. *Walker,* 227 Mich 672, and cases cited therein at pp 677, 678; *In re Sceney,* 330 Mich 55; *In re Brown,* 343 Mich 69) *and in such cases it is quite appropriate to say, as we did in In re Gould, 174 Mich 663, 670, that the courts must be governed 'by the paramount consideration of what is really demanded by the best interests of the child', leaving for subsequent judicial determination questions of guardianship or adoption."*

Specially vouchered as above by Justice SOURIS, *Potter* and *Mathers* alone make wry and cumulant proof that we do have "two irreconcilable lines of cases"—pure shuttlecock law that is—for whimsical application to child custody controversies. . *Potter's* and *Mathers'* triaxial indecision tells our circuit and probate judges—again—that the safest course as of now is to follow the *Corrie* through *Kaiser*[8] best-interest rule until that rule is forthrightly overruled. Their chances of affirmance being no worse than even (compare 1964 *Potter* and *Kaiser* with late-1963 *Mathers*), there is nothing remarkable about the fact that some if not all such judges are concluding that the Supreme Court of Michigan—alone and by its august self—should take the responsibility for any judgment, affecting the custodial welfare of a pulled and torn child, which judgment is contrary to careful ascertainment below of what is best for that child.

To recapitulate a gravely consequential case (consequential at least for an unsuspecting little girl now 4-1/2 years old):

Fitness of a natural parent seeking custody is but 1 of many factors the judge must consider and appraise for ascertainment of best interest. There

8 *Kaiser* v. *Kaiser,* 373 Mich 31.

are so many others. What about the "fitness" of the new stepmother here; the new family unit into which the petitioning father would thrust little Gerri; the life, the love, the training, and the habits with respect to which Gerri has been brought up so far? Above all, what about the personal as well as emotional impact upon Gerri of a custodial transfer at this, distinguished from some future time? Who, to repeat and repeat for emphasis, is best qualified and positioned to answer these critical questions, the seeing, hearing, and investigating judge below, or this print-reading appellate Court? The answer, here, should be as Justice SOURIS and the writer gave in *Potter,* that is, Mr. Ernst may be "fit" as a legal fiddle, yet such fitness provides no definite answer for the real, the "best interest" question.

When, in the course of any form of proceeding instituted in probate or circuit, a litigant party, parent or otherwise, demands of the court that custody of a youngster be retained by or transferred to him, that party and his opponent—and everything about them affecting the best interest question— are necessarily offered up for scrutinous test by the only judge who, under our system, is in position to personally judge the character, the dependability, the credibility, and the fitness of each contender and his custodial milieu. To deny the superiority of that judge's qualification is to procreate blind judgment by blind appellate judges; judges who are utter strangers to the silent evidence of the courtroom (the interviewing chamber as well) which simply cannot be reflected in record or cold print.

Face to face and in personal contact with the contenders, their characters and purposes, their avarices and prejudices, their honesty or dishonesty, their present and past home life, their custodial dependability which sometimes has to be of promis-

sory nature and, most important of all, with the forlorn youngster over which such contenders contend, the trial judge reaches the zenith of his service to the law when he decides what is best for that youngster. We had best have good reason, far better than what is assigned here, for disturbing his measurably better means of attainment of a righteous custodial decision.

Of all malaise suffered by Michigan's newly ordained "one court of justice," the handling by that unitary court of infant destinies transcends even its duty to see that persons charged with crime are assured full protection of the Bill of Rights. In this field, unlike the area of criminal jurisprudence, *prevention* rather than *cure* of evil doings is possible by means of utmost care on the part of judges. I regret much that some of the Brethren seated here, vigilantly concerned as they are that every right to counsel, transcript, hearing, and appeal is assured to those who—presumably guilty—have been imprisoned on plea or verdict of criminal guilt, do not perceive such greater duty to the innocent. Doubtless they forget that a custody order, transferring a child to strange surroundings from a happy and wholesome environment, is just as much a term sentence of that child as is a term sentence of one convicted of felony. We seem concerned much about the latter; much less about the former.

I note again that it is casually easy, seated in our comfortably detached position, to order that a subordinate judge do that which to him is downright sickening, morally wrong, and contrary to his own determination of what is best for the child. To force that judge to personally execute such an order is pretty rough business. Why, as challenged before (*In re Mathers*, 371 Mich at 552, 553), will not just one of the Brethren, voting to reverse this case, volunteer to help Judge Fenlon plunge the knife?

My vote to affirm stands, without an award of costs.

(July 9, 1964)

Standing for affirmance as aforesaid, and having been out-voted in such regard by the Court's majority, and Justices SOURIS, KELLY, and O'HARA having voted to reverse and remand for the making of and consideration by Judge Fenlon of a supplemental record, I cast my vote with the 3 named members of the Court hoping that the "best interest" rule may yet be applied below, either in favor of or against the petitioning father, as reconsideration upon such record may indicate.

I record this, my understanding of the votes of Justices SOURIS, KELLY, and O'HARA; that the purpose of reversal and remand as proposed by them is that of bringing before Judge Fenlon the current situation affecting the welfare and interests of Gerri Ernst, distinguished from that upon which the judge acted in denying habeas corpus.

SOURIS, J. It is not accurate to say, as Mr. Justice BLACK does, that there are in Michigan "2 irreconcilable lines of cases" (p 339, *supra*) on the subject of child custody. The risk that such statement may be accepted uncritically by some of our trial judges, to the possible tragic detriment of a child subject of such litigation, moves me to record my understanding of the cases said to be in irreconcilable conflict. My purpose is to demonstrate there is order instead of the asserted chaos in our precedential decisions.

Gerri Ernst was born to petitioner and his wife in December of 1959. One year later Gerri's mother died. Since her mother's death in December of 1960, Gerri has resided exclusively with her maternal grandparents, Mr. and Mrs. Flynn, the respondents.

Fourteen months after Mrs. Ernst's death, the parties hereto expressed their understanding of the arrangement by which the Flynns were caring for their granddaughter in the following letter agreement:

"February 24, 1962
"Mr. Martin Flynn & May Flynn
East Mitchell Road
Bear Creek Township
Petoskey, Michigan
"*Dear Mr. & Mrs. Flynn:*

"I am requesting your consent to the contents of this letter so that we may have an understanding as to the present care of my daughter, Gerri Ernst, now being cared for by you at your home on East Mitchell road.

"As the father of Gerri, I am entitled of course, to absolute control and custody of her and I reserve the right at any time within reasonable hours, to take her.

"I am willing that presently, she continue in your care under the arrangement, whereby the social security check of her mother, goes directly to you. I recognize that she is receiving good care at your hands, and I am presently willing to have her remain with you.

"I will advise you beforehand when I desire to take Gerri. I shall take and return her within reasonable hours. After the notice to you, at any time within reasonable hours I expect you to deliver Gerri over to me without interference.

"Yours very truly,
"JOHN C. ERNST

"We hereby consent to the care and support of Gerri Ernst upon the above condition.

"MARTIN FLYNN
MAY FLYNN"

In June of 1962, petitioner married a widow and established a home and, upon the Flynns' refusal of his request for return of Gerri to him, promptly

filed a petition for writ of habeas corpus to recover her custody. A full testimonial record was made on return of the writ before Judge Fenlon in August at the conclusion of which the judge rendered the following judgment:

"The Court will make a finding of fact that the best interests of the child is to be with the grandparent, Mrs. Flynn.

"With reference to the question of law, Mr. Campbell, we will leave to the Supreme Court the decision of whether or not there must be a showing on the part of the petitioner, or rather the defendant, to show that the petitioner is an unfit person. I certainly can't find from the testimony that Mr. Ernst is an unfit person. However, I have the decided feeling that the best interest of the child is the grandparent, under the showing made here and I think rather than wait to have production of cases which might counter your position, Mr. Campbell, as I understand it, being that in a petition by the natural parent, the parent should have precedence over anyone else, excepting where there is a showing that the petitioner is an unfit person.

"Now, I don't know whether there [are] any cases on that or not. It would appear that the language from the cases which you cited, indicates that that is the case.

"However, the Court will deny the petition and leave the child where it presently is with Mrs. Flynn.

"Now, that doesn't preclude you, Mr. Ernst, from a later date possibly coming in here, because I am ruling primarily because the child is only 2-1/2 years of age and primarily because of the showing made of the interest of the grandparent and the children of the Flynn family and the independent testimony of others, who so strongly support the position that the child was being well cared for."

Petitioner readily conceded that the Flynns gave his child good care. His contention was and is that

he has re-established a suitable home upon his re-marriage and now is able to resume directly the custody of his daughter. The Flynns did not even assert that petitioner was unfit or that the home to which he proposed to take Gerri was unsuitable.[1] Had Judge Fenlon found as a fact that petitioner was unfit for the care and custody of his daughter Gerri, we would be compelled to reverse such finding for the reason that it would lack evidentiary support in this record. He not only made no such finding but, on the contrary, expressly said he could not make a finding of unfitness from the testimony he heard. Under such circumstances, and the law of this State, the petitioning father should have been granted the custody he sought. Due regard for our predecessors' precedentially binding insistence upon exercise of self-restraint against judicial interference with parental rights, the precedential force of which will be examined and its wisdom reacknowledged herein, requires our reversal of Judge Fenlon's denial of the petition.

It is not enough to assemble all of the cases by which a child's custody has been determined, sometimes in favor of a natural parent and sometimes not, and to conclude therefrom that, *therefore,* there is an irreconcilable conflict between those cases in which the natural parent is favored and those in which he is not. Nor is it much more meaningful to assemble all child custody habeas corpus cases for comparative analysis with cases in which child custody issues arise ancillary to divorce proceedings or with cases asserting statutory neglect or abandonment under chapter 12A of the probate code. CL

---

[1] It is quite evident from Mrs. Flynn's cross-examination that the Flynns have become very much attached to Gerri who, apparently, was their deceased daughter's only child. It is also evident from the testimony she gave that Mrs. Flynn resented petitioner's marriage to his present wife and could not bring herself to surrender Gerri to petitioner and to his new wife who was virtually a stranger to Mrs. Flynn.

1948, § 712A.1 *et seq.,* as amended (Stat Ann 1962 Rev § 27.3178[598.1] *et seq.*).

One significant feature common to all child custody cases, regardless of the procedural label, is this Court's insistence upon the child's best interest prevailing as the predominant, if not sole, judicial concern. But, the standard by which we measure the child's best interest is not always the same in these cases.

Cases brought against a parent for statutory neglect or abandonment, like *In re Mathers,* 371 Mich 516, neither require nor permit any judicial consideration of the child's best interests unless and until a finding of parental neglect or abandonment has been made.

Cases in which parent is pitted against parent for their child's custody, whether in habeas corpus proceedings, like *Corrie* v. *Corrie,* 42 Mich 509, and *Carpenter* v. *Carpenter,* 149 Mich 138, or in proceedings ancillary to divorce actions, like *Weiss* v. *Weiss,* 174 Mich 431, *Paton* v. *Paton,* 363 Mich 192, and *Potter* v. *Potter,* 372 Mich 637, and cases in which the custody contest is between nonparent claimants of custodial right, like *In re Gould,* 174 Mich 663, all present for judicial determination the custodial disposition which will be in the child's best interest without requirement that the Court exercise the overwhelmingly awesome power to terminate, for all practical purposes, a mother's or father's parental rights and to isolate a child, again for all practical purposes, from the last vestige of the family unit into which the child was born. When parent vies with parent, the child usually is assured of retaining the custodial care of 1 natural parent,[2] and when

---

[2] We have given due deference to the legislature's recommendation that mothers be preferred for the custody of children under 12 years and fathers be preferred for the custody of children 12 years or older (CL 1948, § 722.541 [Stat Ann 1957 Rev § 25.311]), without abdica-

parental strangers contest for custody, the parental rights and benefits already have ceased without benefit of current judicial decree. In either case, the child's best interest may be determined judicially without compounding the difficulty of decision by consideration of the statutory or "natural law" preference of parents for the custody of their children and of the rights of children to the care and custody of their natural parents.

Another group of cases, however, squarely pits the child's best interest against the natural parents' right to their child. These are the cases in which a natural parent seeks to recover custody of his child from a third party not the other parent. Illustrative of these cases are *In re Goldinger*, 207 Mich 99; *In re Adams*, 214 Mich 199; *Greene* v. *Walker*, 227 Mich 672; *Ex parte Bush*, 240 Mich 376; *Liebert* v. *Derse*, 309 Mich 495; *In re Seeney*, 330 Mich 55; *In re Brown*, 343 Mich 69; and *Herbstman* v. *Shiftan*, 363 Mich 64. While this Court speaks in terms of the child's best interest in these cases in which a parent seeks to recover a child's custody from a nonparent, just as it does in custody contests between parents or between nonparents, this Court has expressly equated the child's best interests with custodial care by its natural parent—at least as a matter of rebuttable presumption. When the parent is proved morally or otherwise unfit or when it is proved the parent has neglected or abandoned the child, this Court has not hesitated to hold that, for that reason, the child's best interests require it remain with its nonparent custodian.

The significant factor present in these cases, but not in the other 2 classes of cases referred to above, is that parental rights, when arrayed against nonparental claimants to custody, are regarded as pre-

---

tion of our duty of judicial decision. See *Eichholtz* v. *Eichholtz*, 319 Mich 42, and cases cited therein, and *Lair* v. *Lair*, 355 Mich 10.

sumptively compatible with the child's best interests until proved otherwise. Although the Court has varied its language, from time to time, in describing the process by which it reaches its results, it has not deprived a natural parent of its child's custody except upon a finding of unfitness for the exercise of parental responsibility, of parental neglect, or of abandonment.

Thus, in *In re Goldinger,* 207 Mich 99, we reversed the trial court's refusal to issue a writ of habeas corpus to restore custody of a child to his father, the maternal grandmother having cared for the child for about 3 years following his mother's death. Our judgment was based squarely upon the absence of any proof that the father was unfit for the care of his child. At pp 104, 105, the Court expressed the principles controlling decision as follows:

"We are unable to find, however, that this Court has ever said, or interpreted the rule to mean, that a father would be deprived of the possession of his child where it clearly appears that he is a man of good habits, honest, and well able to provide for his child. The only charge that can be made against the petitioner in this case is that during the time immediately after the death of the mother of the child, he did not bestow upon it that affection that might be expected of a parent, but, as the learned trial judge found, this might be explained by the fact that he knew the grandparents would do many things for it that he should have done and that he saw that the child was being attended to. However, he never relinquished the right of the custody of his child, and it was only a short period after his second marriage that he requested its possession. It may be true that the respondent is as much attached to the child as the parent and that she is as suitable to have its custody and as able to provide and care for it, but nevertheless, unless it clearly appears that the parent is for some reason unfit to have its possession,

the rule is well established in our law that the parent is entitled to the possession of his child against all others. The reason for this rule is very aptly stated by the Court in *Weir* v. *Marley,* 99 Mo 484, 494, 495 (12 SW 798, 6 LRA 672), cited by counsel for petitioner in his brief, from which opinion the following is quoted:

" 'In all civilized countries, in which the family is regarded as the unit of social organization, its minor members must and ought to be subject to the custody and control of those who are immediately responsible for their being, for the reason that by nature there has been implanted in the human heart those seeds of parental and filial affection that will assure to the infant care and protection in the years of its helplessness, to be returned to the parents again when they in their turn may need protection, in their years of helplessness and of their child's strength and maturity. The law, at the birth of an infant, imposes upon the parents the duty of such care and protection, to the performance of which the instincts of nature so readily prompts, and clothes him with the right of custody, that he may perform it effectually, upon the presumption that such custody, being in harmony with nature, is best for the interest, not only of the parent and child, but also of society; conceding, however, that the primary object is the interest of the child, the presumption of the law is that its interest *is to be in the custody of its parent.* The law has made provision, in 2 instances, whereby this presumption may be overcome; in the statutes providing for the adoption and apprenticing of children, when, *for their interest,* this right of custody is permitted to be transferred to another. In regard to all other contracts by parents, for the custody of their children, this presumption must obtain; and, while the parent may, by his inability or failure to discharge properly his duty towards his child, forfeit his right to its custody, because the interest of the child demands it, yet, upon the trial of an issue, involving such a forfeiture, he

is entitled to the benefit of such presumption; and, unless the interest of the child does demand it, such forfeiture cannot take place. He cannot deprive himself of this right of custody, which is the concomitant of a personal trust imposed upon him by the law of nature, as well as by positive law, and essential to the discharge of the duties of that trust, by contract *per se,* otherwise he might deprive his child and society of the benefits which the law contemplates will inure to each by the personal discharge of his parental duties.' "

*In re Adams,* 214 Mich 199, was before the Court on original petition here for our writ of habeas corpus. We declined to issue the writ in the exercise of our original jurisdiction, but clearly indicated in our opinion that the petitioning father's remedy lay in the circuit court of Allegan county where a prior habeas corpus proceeding had resulted in a determination by the circuit judge that custody of the petitioner's child should remain with the child's aunt and uncle "until the further order of the court." This Court carefully stated the principles which should be applied by the circuit judge in the event petitioner sought to reopen proceedings in the circuit court. At page 204 the Court said:

"The law makes him [the child's father] her guardian by nature and for nurture, *prima facie* entitled to her care and custody. Bearing in mind also the child's best interests, the courts will primarily 'feel bound to restore the custody where the law places it, with the father, unless in a clear and strong case of unfitness of his part to have such custody.' *Commonwealth* v. *Briggs,* 16 Pick (33 Mass) 203. Where not precluded on other grounds, the court which held him unfit may entertain an application to show that the unfitness by reason of which custody was denied has been removed."

*Greene* v. *Walker,* 227 Mich 672, relied upon by Justice BLACK, was a proceeding in habeas corpus by the father of a 9-year-old child who had lived with her aunt virtually from birth. Circuit Judge Hawley denied relief notwithstanding his finding (p 675) that "the Greene home is one of refinement, pervaded by a Christian atmosphere, and one in the confines of which a child would derive no harm." His denial of the father's petition for judicial decree of custody was based upon the following factual finding, which appears quoted in this Court's opinion at page 676:

" 'Admittedly the father has never paid one cent for the maintenance of his daughter. Since March 31, 1915, he has never seen her, except on 3 or 4 different occasions, and then neither by nor through any initiative or effort of his own. He admits that the daughter, prior to the hearing of this case, was a stranger to him and that he would not have known her if he had met her on the street. On at least a majority of the occasions when he has seen her, it has been through the efforts of Mr. and Mrs. Matlock and upon 1 occasion, and as I understand it, the last occasion he ever saw her prior to the hearing, his attention was especially challenged to his daughter by Mr. Matlock, who asked him to come and see her as she was then on the street in an automobile. He did so, looked at her and turned away without saying a word either to her or to anyone else. Admittedly he had not seen her for 6 years prior to the time that this hearing in court was commenced. Under his own admission he gave her a Christmas present on her first and second Christmas anniversaries, but never since, except as he has done so through the instrumentality of his son. This absence of interest on the part of the father requires no characterization by the court.' "

In affirming Judge Hawley's denial of the writ, this Court relied heavily upon *In re Gould,* 174 Mich

663, from which Justice BLACK quoted in his dissent in *In re Mathers,* 371 Mich 516, 541. It is important to note that in *Gould,* as in *Greene,* the natural father's conduct toward the subject child amounted to abandonment of the child. Thus, in *Gould,* 174 Mich at 671, this Court made an observation which is peculiarly pertinent to the case at bar:

"This is not a case where the father, unfortunately separated from his offspring for a time by adverse circumstances, now, prompted by a parent's love and yearning for the companionship of his only child, seeks his custody that he may, by association in the relation of father and son, strengthen the blood ties of closest kinship, himself offering to care for, support, educate, and rear his son for the mutual benefit and happiness of both. Were that the proposition before the court, and were the father shown to be a moral man of fit character with not only the disposition, but the ability and means, to properly discharge his parental obligations, a very different and much more delicate and difficult problem would confront the court."

In *Greene* v. *Walker,* the petitioning father, as noted by Circuit Judge Hawley, likewise abandoned his daughter to her aunt. In both *Gould* and *Greene,* this Court expressly acknowledged the continuing right of a parent to a child's custody and to the protection of such right by the courts so long as the parent's conduct toward the child does not justify a forfeiture of such parental rights. In *Greene* v. *Walker,* at p 679, the Court quoted the following from 174 Mich at 669 of *In re Gould:*

"*Prima facie* the father was, and by the adoption to which he consented petitioner is, entitled to the custody of the child. The law recognizes the rights of the father because it recognizes the natural duties and obligations of the father. The father's right to and authority over his child are secure and inviolable

so long as he properly discharges the correlative duties."

As we recently noted in *Herbstman* v. *Shiftan,* 363 Mich 64, at p 68, it is only when the parent fails properly to discharge those correlative parental duties referred to in *Gould, supra,* that the courts legally may exercise judicial control over his child's custodial care.

*Ex parte Bush,* 240 Mich 376, emphasizes what has been said. In *Bush,* the trial court awarded custody to the petitioning mother solely on the basis of the "naked legal claims" of the parties without any consideration of and upon refusal to inquire into, "the question of her moral fitness to have custody of the child." 240 Mich at 380. This Court quoted again from *In re Gould, supra,* this time the following from 174 Mich at 670 of the *Gould* opinion:

"The power of parental control, though recognized as a natural right and protected when properly exercised, is by no means an inalienable one. When the 'right of custody' is involved between respective claimants for a child, the courts, though in the first instance recognizing *prima facie* rights of relationship, in the final test are not strictly bound by demands founded upon purely technical claims or naked legal rights, but may and should, in making the award, be governed by the paramount consideration of what is really demanded by the best interests of the child."

*Liebert* v. *Derse,* 309 Mich 495, relying upon *In re Goldinger, supra,* and *In re Adams, supra,* reversed the dismissal of a petition for habeas corpus sought by the adoptive father of a 6-year-old male child whom he had placed in the care of a sister of his deceased wife shortly after his wife's accidental death 4 years earlier. Circuit Judge Pugsley found no reason to believe that the adoptive father was un-

fit in any way to resume custody of the child but nonetheless declined to grant the writ because, in his judgment, he did not believe there would be sufficient advantage to the child in a disruption of the "wholesome and happy surroundings" then existing. This Court, at page 500, in reversing Judge Pugsley, put the controlling considerations in the following language:

"In the absence of a showing that he is not a suitable person to have the custody of the child, plaintiff, as the surviving parent, is legally entitled to his custody under the probate code, Act No 288, chap. 3, § 6, Pub. Acts, 1939 (CLS 1940, § 16289–3[6], Stat Ann 1943 Rev § 27.3178[206]), [3] which provides in part:

" 'The father or mother of the minor, and if 1 of them be deceased, *then the survivor thereof, being respectively competent to transact their own business, and otherwise suitable,* shall be entitled to the custody of the person of the minor and to the care of his education.' "

"We recognize the long-established rule that the best interest of the child is of paramount importance, *Martin* v. *Benzie Circuit Judge,* 200 Mich 549; *In re Gould,* 174 Mich 663, and that it is our judicial duty to safeguard his welfare and care, *Bird* v. *Bird,* 308 Mich 230. However, we never have interpreted such rule so as to deprive a parent of the custody of his or her child, unless it was shown that the parent was an unsuitable person to have such custody. It should be borne in mind that, in the present case, there was no showing that plaintiff was not a suitable and proper person to have the custody of his son."

In *Liebert,* the Court relied also upon *Partch* v. *Baird,* 227 Mich 660 (affirmed on rehearing in 230 Mich 615), and *Chevlin* v. *Tarner,* 274 Mich 249, in both of which a natural parent placed his child with

---

3 Now CLS 1961, § 703.6 (Stat Ann 1962 Rev § 27.3178[206]).

a near relative after the death of his spouse or a
divorce and in both of which this Court recognized
the law's preference for the natural parents absent
a showing of unfitness.

Where the court is confronted with evidence of
unfitness it certainly has not hesitated to determine
that the child's best interests require other custodial
arrangements.   See *Greene* v. *Walker, supra,* and
*In re Seeney,* 330 Mich 55, and *In re Brown,* 343 Mich
69.   In *Seeney* and in *Brown,* the petitioners, the
natural parents, were denied judicial assistance in
recovering custody of their children.   In both cases
the facts disclosed that the natural parents had for
all practical purposes abandoned their children to
others for periods of 5 and 6 years, respectively.

It is quite clear to me that this Court consist-
ently has drawn back from the exercise of such grave
power over the parent-child relationship unless the
natural parents themselves have demonstrated by
their conduct their unfitness for resumption of
parental responsibilities.   I find it very difficult to
read our decisions to mean that in the hands of a
single judge at the trial court level or in our own
hands at the appellate level lies the power to deter-
mine, solely on the basis of our all too fallible judg-
ment, that a child's "best interests" would be served
by denying the natural parent's right to custody in
favor of a parental stranger's custody.   Similar
fears were expressed by Mr. Justice Nelson Sharpe
in a concurring opinion in *Greene* v. *Walker,* 227
Mich 672, 682, 683:

"The trial court, in his return to the writ, quoted
by Mr. Justice Moore, said:
" 'The paramount question under the law in all
cases of this character is the welfare of the child.
All other considerations must yield to this one.'
"The application of this rule, as thus broadly
stated, cannot but nullify the statute.  If a father be

a laboring man, it might well be claimed that 'the welfare of the child,' his 'best interests,' requires that he should be left in the custody of grandparents, in whose care he had been temporarily placed by the father on the death of the mother, if they be wealthy, and able and willing to give him the benefit of a college education, and surround him with more pleasant environment.   But, if the father be honest, moral, affectionate to his children, and his home be surrounded with good influences, and it is apparent that the child will receive kind treatment in it, in my opinion he is entitled to its custody.   I think this Court has always recognized the *prima facie* right of the parent, and has never decided against such right, except in cases, like the one under consideration, where the facts justified a denial of it."

Whether we conclude that this Court's concern for the natural parents' rights (and obligations) is based upon "natural law" concepts, statutory preferences, or upon sound common-law principles, the fact remains that in this State our precedential authority requires that we presume the child's best interests lie with his natural parents' exercise of custodial rights absent a showing of the natural parents' unfitness or their neglect or abandonment of the child whose custody they seek.   Accordingly, Judge Fenlon's specific finding that Gerri Ernst's natural father, petitioner herein, was not an unfit person for her care and custody compels our reversal of his denial of the writ.   Such reversal, however, does not require that we order issuance of the writ, nor do I think we should so order.   Instead, since the record which we here review was made almost 2 years ago, I would remand this cause for a current supplementary testimonial record and for reconsideration thereof by the trial judge in the light hereof:

The Chief Justice and Justices DETHMERS and SMITH authorize me to state that, while concurring

in the reasoning of this opinion by which we have concluded that Judge Fenlon's order denying the writ of habeas corpus must be reversed, they do not agree that we should remand for reconsideration upon a current supplementary testimonial record. Instead, it is their judgment that the order be reversed and this cause remanded for entry of an order transferring custody of Gerri Ernst to petitioner.

KAVANAGH, C. J., and DETHMERS, KELLY, SMITH, and O'HARA, JJ., concurred with SOURIS, J.

ADAMS, J., took no part in the decision of this case.